[Crim. No. 28538. Second Dist., Div. Four. Oct. 15, 1976.]

In re DAVID W., a Person Coming Under the Juvenile Court Law.
CLARENCE E. CABELL, as Acting Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
DAVID W., Defendant and Appellant.

**COUNSEL**

Patricia A. Shanahan, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Kent L. Richland and Penina S. Gelder, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, J.**—David appeals from an order of the juvenile court, declaring him to be a ward of that court as being a person coming under section 602 of the Welfare and Institutions Code. We affirm the order.

In a petition filed pursuant to Welfare and Institutions Code, section 602, on August 20, 1975, in juvenile court, appellant David W., a minor, was charged with grand theft of an automobile in violation of section 487, subdivision 3, of the Penal Code.

On August 21, appellant and his parents were advised of and thereafter waived their constitutional rights, counsel was appointed to represent appellant, and allegations of the petition were filed and read to appellant who denied them. The minor was ordered temporarily detained in juvenile hall pending a hearing.

Following a hearing on August 28, the juvenile court found that a prima facie case existed. Based on facts from the hearing and as a matter of immediate and urgent necessity for the protection of the minor and persons and property of others, it was ordered that the minor be detained pending adjudication.

The adjudication hearing began on September 5, 1975, and continued on September 10. On that latter date, appellant's motion for judgment of acquittal under Penal Code section 1118 was denied. The court sustained the petition and ordered appellant to remain at juvenile hall pending the next hearing.

On September 13, appellant filed, under section 558 of the Welfare and Institutions Code, an application requesting a rehearing of the adjudication proceedings heard by juvenile court referee on September 5 and 10. This application for rehearing was granted on October 7, 1975.

On September 24, a juvenile court referee ordered and adjudged that appellant remain a ward of the court under section 602 of the Welfare and Institutions Code. It was also decreed that the minor remain in custody at juvenile hall pending location of a suitable placement.

On December 2, 1975, the rehearing ordered on October 7, 1975, commenced. Appellant waived his rights to confrontation, cross-examination, and his privilege against self-incrimination. Pursuant to stipulation, the matter was submitted on the transcript of the hearings held three months earlier. The juvenile court stated that it had read and considered the transcript which was then received in evidence. The minor appellant remained in custody in juvenile hall.

At a continuation of the rehearing held on December 13, the juvenile court referee once again found the allegations of the petition of August 20 to be true and sustained the petition. Appellant was found to be a person described by Welfare and Institutions Code, section 602, and ordered to remain at juvenile hall.

On January 13, 1976, the juvenile court again declared David W. a ward of the court under section 602 of the Welfare and Institutions Code. The court found that the welfare of the minor required that custody remain taken from his parents. Appellant was ordered placed in the care, custody, and control of the probation officer for suitable placement. In the interim, pending placement, appellant was ordered temporarily detained in juvenile hall.

This is an appeal from the January 13, 1976, order of the juvenile court sustaining the petition of August 20, 1975, under section 602 of the Welfare and Institutions Code and decreeing appellant to be a ward of the court.

At about 9:30 a.m. on July 21, 1975, Raymond Radurte parked his beige 1963 Chevrolet Impala coupe at the Gateway Market on Avenue 26 at North Figueroa and Herron in the City of Los Angeles. At 1:30 p.m. he returned to the area where he had parked his vehicle only to discover that it was missing. The vehicle identification number (VIN) of Radurte's car as it was listed on his pink slip was "31847 L 143185."

Earlier that year in March or April, appellant's mother, Aliner Phillips, had bought for him a white 1963 Chevrolet Impala. The engine

in that car froze up in June or July of 1975 and it was pulled into the residence of Mrs. Phillips.

On or about July 21, 1975, Mrs. Phillips spotted another 1963 Chevrolet Impala parked in front of her home. This one was beige colored. She observed her son David W. taking the license plates off the car she had purchased and placing them on the beige colored vehicle. She also saw appellant replacing the wheels of the beige Chevrolet with the chrome-plated ones from the white Chevrolet. A couple of days later, the white car Mrs. Phillips had bought for appellant was junked. After switching the license plates and wheels, appellant left his mother's home to go live with his guardian, Mrs. Simpson.

Approximately a month later on August 17, Mrs. Phillips, desiring to bring her son home, telephoned the police. Police Officer Ronald A. Smith arrived at her residence with four other policemen. Mrs. Phillips informed Officer Smith where her minor son had been living for the past month and that she wanted him to return home. She also stated to the officer that she knew appellant was driving a stolen vehicle because she had seen him exchanging the license plates.

After speaking to Mrs. Phillips, Officer Smith then went to the Simpson address to further investigate this matter. Mrs. Simpson explained to Officer Smith that she was the guardian of the minor. She added that she had been having problems regarding the custody of the minor with Mrs. Phillips who she said would probably say anything to have her son back in her house. According to Mrs. Simpson, the car in question belonged to the minor.

Officer Smith then talked with the minor to find out whether the beige Chevrolet parked in the Simpson driveway belonged to him. The police officer asked if he could check the vehicle. Appellant said yes and gave the keys to him.

Officer Smith opened the door to the car and saw that the VIN tag was missing from its place over the door post. He immediately initiated, over the police car radio, a Department of Motor Vehicles check of the license plate number of the beige car. The report came back saying the car was not stolen and was registered to appellant.

Then the officer asked the minor about the missing VIN tag. Appellant responded that the tag had fallen off but he had put it in the glove compartment inside the vehicle. After retrieving the VIN tag from the glove compartment, Officer Smith again requested over the radio a check of this number. The return report indicated that the number on the VIN plate corresponded with the license plate number on the car.

However, because the VIN tag was missing from its usual place on the car, Officer Smith impounded the vehicle for further investigation and identification.

On the morning of August 18, Police Investigator William B. Snyder received an impound vehicle report submitted by Officer Smith. The report stated that the VIN tag had been removed from the beige 1963 Chevrolet now in custody. Investigator Snyder called the burglary auto theft division and requested that an expert go to Kaiser Tow where the vehicle was stored and inspect it for the confidential vehicle identification number.

That same day, Police Officer William L. Johnson from the burglary auto theft division went to Kaiser Tow and checked for the secret VIN of the beige Chevrolet. Officer Johnson was an auto theft specialist. The secret number on this impounded vehicle turned out to be "31847 L 143185."

Soon thereafter, burglary auto theft division called back Officer Snyder and told him the VIN of the impounded car. Officer Snyder made a check of the number and received a teletype report pointing out that that vehicle identification number was from a stolen vehicle. With this information, Officer Snyder put out a request for the arrest of the minor appellant.

On August 21, Raymond Radurte, owner of the missing car, went to the police impound section after receiving notice that his car was there. Radurte noticed that his car now sported chrome wheels and was missing his cassette tapes. Nevertheless, he identified the beige 1963 Chevrolet as his own.

At the first session of the adjudication hearing on September 5, Officer Johnson testified regarding his inspection of the impounded vehicle for the secret VIN. On cross-examination, when asked where this secret

number was located, Officer Johnson requested that he not be asked that question, apparently asserting a governmental privilege under section 1040 of the Evidence Code. The officer cited the need for its confidentiality to enable police to identify stolen cars.

Following the December session of the rehearing of the instant case, the court authorized the ex parte appointment of an independent expert witness, under section 730 of the Evidence Code, to identify and examine the vehicle identification number of the impounded car and testify in court as to his verification of that number.

The court appointed Robert E. Barrie, a special agent for the National Automobile Theft Bureau, a nonprofit service organization. The bureau is a civilian organization with no official connection with law enforcement agencies. With eight years experience in the National Automobile Theft Bureau, Barrie had knowledge of the secret location of the VIN. This bureau and the Federal Bureau of Investigation are the only organizations allegedly with knowledge from the car manufacturers of this restricted information.

On December 29, 1975, Agent Barrie went to Radurte's home and examined the beige 1963 Chevrolet Impala which then was back in its owner's possession. He made a tape impression of the vehicle identification number and transferred it onto a 3 × 5 card. The VIN of Radurte's car was confirmed to be "31847 L 143185."

Agent Barrie testified at the rehearing on December 30. As one vested with the responsibility of maintaining the secrecy of the location of the VIN for law enforcement purposes, he asserted the privilege of official information in refusing to reveal its location on the motor vehicle. He did not reveal its location to the prosecution on direct examination or out of court. Barrie harbored no doubt that the number on the card was the vehicle identification number on Radurte's beige 1963 Chevrolet Impala coupe.

The court at the rehearing denied appellant's motion to strike Barrie's testimony.

■■ The minor's contentions on this appeal all rest on the fact that the trial court did not require the petitioner to disclose the location of the secret identification number, so that counsel (or his own expert) could examine it and determine whether the police witness had correctly

reported that number. The contentions, based on the trial court's refusal to allow that discovery, are two: (1) that the information was not privileged within the meaning of section 1040 of the Evidence Code;[1] and (2) that the appointment of Barrie did not satisfy the due process requirements reflected in section 1042 of the Evidence Code, in that no *in camera* hearing, as provided for in section 915 of that code was held. These contentions are without merit.

(1) We agree with the trial court that the privilege, claimed by the petitioner and the police officer, was properly invoked. To allow public knowledge of the location of the secret identification number would destroy its very purpose and would remove a valuable investigatory device that may lead to the discovery of vehicle thefts.

(2) It is immaterial whether the appointment of Barrie and the proceedings in which the trial court received this testimony amounted to an *in camera* hearing within the provisions of section 915. Under section 1042,[2] the privilege need not be disclosed or sanctions applied unless the privileged information *is material.* Section 915 affords only one method for determining materiality. Here the trial court, by the use of its own expert, conducted the very kind of examination that the minor's counsel sought to make, and satisfied itself that no further examination would, or could, produce anything material to the defense.

The minor relies on the early decision in *People* v. *King* (1932) 122 Cal.App. 50 [10 P.2d 89]. That reliance is misplaced. In *King,* in addition

[1]"(a) As used in this section, 'official information' means information acquired in confidence by a public employee in the course of his duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.

"(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing such information, if the privilege is claimed by a person authorized by the public entity to do so and:

"...

"(2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered."

[2]The pertinent portion of section 1042 reads as follows: "(a) Except where disclosure is forbidden by an act of the Congress of the United States, if a claim of privilege under this article by the state or a public entity in this state is sustained in a criminal proceeding, the presiding officer shall make such order or finding of fact adverse to the public entity bringing the proceeding as is required by law upon any issue in the proceeding to which the privileged information is material."

to substantial evidence as to defendant's guilt, a police officer had testified, as in this case, about the existence of the secret VIN numbers and to his identification of the subject vehicle as a stolen car by use of that number. The court said (at p. 57): "There is no doubt that the information regarding these 'secret numbers' is such a communication and is privileged under the statute, and, if the witness had not testified on direct examination respecting the fact that these numbers are stamped on secret locations on the cars, and that he compared such stamped numbers with the motor numbers of the Smith car and the Blecka car, no doubt he could have claimed this privilege. But by reason of the fact that the witness voluntarily testified in response to questions by the district attorney about these matters, a very different question is presented. Without an opportunity for such cross-examination, appellant had no way of checking up on such testimony to determine if the stamped numbers were on the cars, or if the witness correctly testified to his comparison of these numbers with the motor numbers respectively. In the view we take of this case it is not necessary to determine this question, for the reason that we believe that the identification of the Smith car by Mrs. Smith and her son, when considered with all the other facts and circumstances of the case, was a sufficient identification without the identification made by the witness Potts. If the rulings of the trial court on said objection and said motion were erroneous, they were not prejudicial to the substantial rights of defendant. . . ."

Clearly, that language stands for no more than that, as in the case at bench, there is an issue whether the policy underlying the official privilege rule outweighs the policy in favor of full cross-examination. The *King* court never decided that issue either way. In the case at bench we are faced with the same issue. We decide only that in this nonjury trial, the trial court's use of its own independent expert was a satisfactory and a constitutional resolution of the conflicting policies.

The minor's counsel argues that, because of the nature of Mr. Barrie's employment, he was not an impartial expert on whose testimony the trial court was entitled to rely. We cannot second-guess the trial court's determination of credibility.

The order appealed from is affirmed.

Files, P. J., and Dunn, J., concurred.