[No. A041921. First Dist., Div. Four. Aug. 19, 1988.]

ROBERT RAY HINES, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Patrick H. Hetrick for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, and Landra E. Rosenthal, Deputy Attorney General, for Real Party in Interest.

OPINION

**ANDERSON, P. J.**—Petitioner challenges the denial of his motion to set aside the information against him pursuant to section 995 of the Penal Code.

Petitioner was charged by complaint with possession for sale of base cocaine, cocaine and heroin on December 1, 1987, in violation of sections 11351.5 and 11351 of the Health and Safety Code. At the preliminary hearing held on February 5, 1988, Officer Wayne Weir testified that on December 1, 1987, he was working on covert surveillance in the investigation of sales of narcotics in North Richmond. He was watching the corner of Fifth and Grove through binoculars and observed a number of transactions in which petitioner appeared to be exchanging something for money. The transactions involved either passing pedestrians or passing motorists. Officer Weir concluded that the transactions involved narcotics and by radio asked for the arrest of petitioner and a juvenile who appeared to have a stash of drugs from which petitioner was dealing. Officers Rubin and Wells responded and petitioner was arrested.

On cross-examination, Officer Weir was asked where he and his partner were located when they made their observations. Officer Weir asserted the official-information privilege of section 1040, subdivision (b), of the Evidence Code.[1] The court ruled that the privilege applied and the cross-examination was limited to questions regarding any obstructions or limitations to the observations. Thus, Officer Weir testified that the location was clear and unobstructed; that his observation point was about 50 yards from petitioner; that it was daylight and somewhat overcast. At the close of cross-examination, defense counsel took "formal exception" to the application of the privilege. On redirect, Officer Weir testified that the location was "currently used as an ongoing operation for investigations" and that ongoing investigations would be jeopardized by disclosure.

Officer Wells testified that he responded to Weir's radioed directions to detain petitioner and the juvenile and was directed by Weir to the stash of narcotics. When he found the stash of narcotics, he arrested the two for possession of narcotics for sale. Both subjects were strip searched and a hypodermic needle was found on petitioner. On cross-examination, Wells testified that he was supervising the drug task force that morning. He told Weir to position himself so that he could watch the street activity at Fifth and Grove. He did not tell him to use a specific location and did not know where Weir made his observations. Apparently he did not observe any of the activity of appellant as related by Officer Weir.

Petitioner was held to answer the charges. He moved to set aside the information pursuant to Penal Code section 995 on the ground that refusing to allow cross-examination of Officer Weir concerning his location required

---

[1] All further statutory references are to the Evidence Code unless otherwise designated.

*that the information be set aside. The motion was denied and the instant petition followed. (Pen. Code, § 999a.)*

Section 1040 provides a privilege for "information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made." (Subd. (a).) A public entity has a privilege to refuse to disclose official information if "[d]isclosure . . . is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; . . ." (Subd. (b)(2).)

 Petitioner contends that Weir's surveillance location does not come within the privilege because the record does not show that the location was "acquired in confidence . . . during the course of his . . . duty." "Officer Weir did not 'acquire' knowledge of the location from which he was operating; he simply selected it, and chose to keep it secret." The effect of the magistrate's ruling, argues petitioner, is to elevate anything that comes within an officer's knowledge during an investigation to "official information."

Petitioner takes too restrictive a view of the statutory word "acquire." The term does not exclude information that is generated by the person claiming the privilege. To acquire means "to come into possession . . . of often by some uncertain or unspecified means." (Webster's Third New Internat. Dict. (1981) p. 18.) To hold, as petitioner seems to suggest, that the location could be official information if petitioner was told of it by Officer Wells rather than discovering it himself creates a distinction which is neither required by the statute nor consistent with the purpose of the privilege. We hold the surveillance location was information to which the privilege could apply.

However, as Justice Kaus commented, the exercise of the privilege under section 1040 is a mixed blessing because of the requirement of an adverse finding in section 1042. *(Kelvin L.* v. *Superior Court* (1976) 62 Cal.App.3d 823, 830 [133 Cal.Rptr. 325].) Section 1042, subdivision (a) provides: "Except where disclosure is forbidden by an act of the Congress of the United States, if a claim of privilege under this article by the state or a public entity in this state is sustained in a criminal proceeding, the presiding officer shall make such order or finding of fact adverse to the public entity bringing the proceeding as is required by law upon any issue in the proceeding to which the privileged information is material."

The adverse finding is only required if the privileged information is *material*. In *In re David W.* (1976) 62 Cal.App.3d 840 [133 Cal.Rptr. 342], the

defendant was accused of auto theft. It became important to the defense to ascertain the identification number of the car which was placed in a secret location on the car by the manufacturer. A police officer testified concerning the number but claimed the privilege when asked its location; the defense, therefore, could not verify the number. The trial court allowed the privilege since public knowledge of the location of the secret identification number would destroy its purpose. However, the trial court appointed an independent expert witness to identify and examine the vehicle identification number of the car in question and testify in court as to his verification of that number. (*Id.,* at p. 846.) Thus, the appellate court held that knowledge of the secret location was no longer material to the defense and no adverse finding was required. (*Id.,* at p. 847.)

In the instant case the Attorney General argues that the location of the surveillance is not material on the question of guilt or innocence. However, he concedes that "what is important is whether or not Officer Weir was able to adequately observe the transactions." The purpose of the defense in learning the location was to test that very observation—did Officer Weir actually have a clear and unobstructed view of the scene? This was the very issue to which the privileged information was material.

In sustaining the privilege the magistrate has severely limited the petitioner's right to cross-examine on this material issue. ■ The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the accuracy of the truth-determining process. (*Chambers* v. *Mississippi* (1972) 410 U.S. 284, 295 [35 L.Ed.2d 297, 308-309, 93 S.Ct. 1038].) The Sixth Amendment's right of an accused to confront the witness against him is, just like it's right-to-counsel guaranty (see *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]), " ' "a fundamental right, essential to a fair trial" ' and 'thus [was] made obligatory on the States by the Fourteenth Amendment.' " (*Pointer* v. *Texas* (1965) 380 U.S. 400, 403. [13 L.Ed.2d 923, 926, 85 S.Ct. 1065]) ■ When invoking the privilege results, as here, in depriving the petitioner of his fundamental right to cross-examination on a material issue, an adverse finding is mandated by section 1042 and the magistrate's failure to make one requires reversal.

For the guidance of magistrates faced with similar decisions in the future we briefly address the question of what "finding of fact adverse to the public entity" the magistrate should have made. The Law Revision Commission Comments to section 1042 suggest that the consequences of invoking the privilege are based upon the public policy of simple fairness, quoting *United States* v. *Reynolds* (1953) 345 U.S. 1, 12 [97 L.Ed. 727, 735, 73 S.Ct. 528, 32

A.L.R.2d 382] that: "since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense." The commission suggests that, if the privileged information is material to the defendant's guilt or innocence, the consequences of its invocation should be dismissal pursuant to *People* v. *McShann* (1958) 50 Cal.2d 802 [330 P.2d 33]. The commission further suggests that if the privileged information relates to narrower issues such as the legality of a warrantless search, the consequence might be the striking of the testimony of a particular witness or the court's fashioning of "some other order appropriate under the circumstances," citing *Priestly* v. *Superior Court* (1958) 50 Cal.2d 812 [330 P.2d 39].

■■■ We agree with the Attorney General that the appropriate order here should have been for the magistrate to strike the testimony of Officer Weir's observations. Without that testimony there remains insufficient evidence to support the holding order. (See *Rideout* v. *Superior Court* (1967) 67 Cal.2d 471 [62 Cal.Rptr. 581, 432 P.2d 197].)

Let a peremptory writ of prohibition issue restraining the Contra Costa Superior Court from taking any further action other than to grant the motion pursuant to Penal Code section 995.

Poché, J., and Channell, J., concurred.