[No. B040886. Second Dist., Div. Five. May 17, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
TYRANT OTE WALKER, Defendant and Appellant.

COUNSEL

John D. O'Loughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, David F. Glassman and Alison Braun, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

TURNER, P. J.—

## I. INTRODUCTION

In this appeal, defendant, Tyrant Ote Walker, challenges his conviction for the sale or transportation of cocaine (Health & Saf. Code, § 11352) on the ground that the trial court failed to make an adverse finding after sustaining a police officer's invocation of a privilege pursuant to Evidence Code

section 1040.[1] We determine that the trial court acted properly and affirm the judgment.

## II. PROCEDURAL HISTORY

Defendant was convicted of one count of sale or transportation of a controlled substance. Defendant filed a new trial motion on the sole ground that the trial court erred in allowing the officer to invoke a confidential privilege for his surveillance location. At the hearing on the motion, defendant asserted the officer's testimony should have been stricken. The trial court concluded that based on the evidence at trial nothing could have been gained by knowing the officer's exact location and denied the motion. Defendant was sentenced to a three-year prison term.

## III. FACTS

### A. *The Prosecution's Case*

At the trial, Long Beach Police Officer Joseph Bahash testified that on Sunday, October 2, 1988, he was working in uniform on a surveillance of a single building at 219-221 East Artesia in Long Beach. At approximately 5:45 p.m. that day, Officer Bahash observed defendant in the courtyard which joins 219 and 221 East Artesia. A person identified as Gabriel Gomez (Gomez), pulled an older model, white Ford station wagon in the alley to the rear of 219-221 Artesia. A woman was also in the car. Gomez parked behind 221 East Artesia and went inside the courtyard. Officer Bahash was standing approximately 25 feet away from the area when he observed defendant have a short conversation with Gomez. Defendant then went up the stairs of the 219 East Artesia building and disappeared from view for about three minutes. When defendant returned, Gomez handed him some currency and received a small object from defendant. The object was small enough that it could be held between the thumb and forefinger. Officer Bahash was standing about 15 feet away from the exchange of the currency and the small object. Gomez placed the object in his right shirt pocket and got into the white station wagon. Officer Bahash advised other detectives of the vehicle's description and license plate. Officer Bahash testified that he had a clear unobstructed view of the drug transaction. Officer Bahash asserted an official-information privilege and refused to disclose the location from which he made the observation.

Officer Tyrone Hatfield testified that within two to three minutes of hearing Officer Bahash's broadcast, he came into contact with Gomez and

---

[1]All further statutory references are to the Evidence Code.

his female passenger and detained them. The officer recovered a piece of rock which appeared to be rock cocaine from Gomez's right shirt pocket. Michael Hoover, a Long Beach Police Department criminalist, testified the rock found in Gomez's pocket was cocaine.

After Gomez was arrested, Officer Bahash met with two other officers to discuss arresting defendant. When he returned to the location, he could not find defendant. On October 8, 1988, six days after Gomez was arrested, Officer Bahash observed defendant in the rear of 221 East Artesia putting objects into a garbage can. Officer Bahash recognized defendant immediately and placed him under arrest.

Officer Robert Sergi testified that when he interviewed defendant after the October 8, 1988, arrest, defendant stated " 'You think I sold some rock cocaine to a little white guy, don't you?' " Defendant then told Officer Sergi that on Sunday, he made contact with a little white guy who was driving a Ford station wagon with a female passenger. Defendant said to the "white guy" that he (defendant) did not sell cocaine but directed him to "Tekington" to buy "coke." Gomez was a Caucasian and, as previously mentioned, was driving a Ford station wagon with a woman as a passenger.

### B. *Defense Case*

Defendant denied selling cocaine to Gomez or having the conversation with Officer Sergi in which he admitted talking to Gomez. Defendant believed that a vacant house in the rear of the buildings where Officer Bahash might have made his observations was 34 to 39 feet from the area where the drug transaction was made. He testified that he was playing basketball at Coolidge Park at 5:45 p.m. on October 2, 1988. He did not know the names of any of the people that played in the game.

Defendant's mother testified that defendant left the apartment in the morning of October 2, 1988, and did not return until around 8:30 p.m. She observed police officers arrest her boyfriend, Otis Palmer, in her apartment. A number of police officers were in the area of the apartment building from about 3 that afternoon until they began making arrests. She left her apartment to attempt to post bail for Palmer. She returned home about 8:30 p.m. that evening. She did not see the white station wagon that Gomez was driving that day.

### IV. DISCUSSION

■■■ Defendant contends that after the trial court upheld the surveillance location privilege, it erred in not striking Officer Bahash's testimony. Citing *People* v. *Montgomery* (1988) 205 Cal.App.3d 1011, 1015-1024 [252 Cal.Rptr. 779] and *Hines* v. *Superior Court* (1988) 203 Cal.App.3d 1231,

1234-1236 [251 Cal.Rptr. 28] defendant claims that the judgment must be reversed because the location was material to the issue of guilt and nondisclosure deprived him of a fair trial pursuant to the requirements of section 1042, subdivision (a).[2] We disagree and, for the reasons stated below, we affirm the judgment.

California and other jurisdictions which have considered the question of whether a police officer's surveillance location is entitled to a confidential privilege, have determined that the information is privileged. (See *People* v. *Montgomery, supra,* 205 Cal.App.3d at pp. 1017-1019; *Hines* v. *Superior Court, supra,* 203 Cal.App.3d at p. 1234; see also *United States* v. *Harley* (D.C.Cir. 1982) 682 F.2d 1018 [221 App.D.C. 329]; *United States* v. *Green* (D.C.Cir. 1981) 670 F.2d 1148 [216 App.D.C. 329]; *State* v. *Williams* (1990) 239 N.J. Super. 620 [571 A.2d 1358]; *Com.* v. *Lugo* (1990) 406 Mass. 565 [548 N.E.2d 1263, 1265].) ■ Under California law, section 1040[3] provides for the privilege of nondisclosure of a police surveillance location. (*People* v. *Montgomery, supra,* 205 Cal.App.3d at p. 1019.) The policy behind the location privilege is analogous to the informant's identity privilege.[4] As stated in the often cited *United States* v. *Green, supra,* 670 F.2d at page 1155, "Like confidential informants, hidden observation posts may often prove to be useful law enforcement tools, so long as they remain secret. Just as the disclosure of an informer's identity may destroy his . . . usefulness in criminal investigations, the identification of a hidden observation post will likely destroy the future value of the location for police surveillance. The revelation of a surveillance location might also threaten the safety of police officers using the observation post, or lead to adversity for cooperative owners or occupants of the building. Finally, the assurance of nondisclosure of a surveillance location may be necessary to encourage property owners or occupants to allow the police to make such use of their property." Furthermore, in most cases a surveillance location and consequently the people who have permitted the use of their property deserve

[2]Section 1042 provides in part: "(a) Except where disclosure is forbidden by an act of the Congress of the United States, if a claim of privilege under this article by the state or a public entity in this state is sustained in a criminal proceeding, the presiding officer shall make such order or finding of fact adverse to the public entity bringing the proceeding as is required by law upon any issue in the proceeding to which the privileged information is material."

[3]Section 1040 provides in part: "(a) As used in this section 'official information' means information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made. [¶] (b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and: . . . [¶] (2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; . . ."

[4]The federal standard for determining the informant's identity privilege was set forth in the United States Supreme Court case of *Roviaro* v. *United States* (1957) 353 U. S. 53, 60-66 [1 L.Ed.2d 639, 644-648, 77 S.Ct. 623].

more protection than the informant who has mobility as a protection against reprisal since "a person whose address is revealed has no place to hide." (*People* v. *Montgomery*, *supra*, 205 Cal.App.3d at p. 1019.)

■ In determining whether to uphold the privilege, the trial court is required to engage in a balancing process under section 1040, subdivision (b)(2) which provides that a governmental privilege will be upheld "where the necessity for confidentiality 'outweighs the necessity for disclosure in the interest of justice,' . . ." (*People* v. *Superior Court* (1971) 19 Cal.App.3d 522, 530 [97 Cal.Rptr. 118].) Section 1040 does not, however, "license fishing trips. By calling for disclosure in the interest of justice, it compels the claimant to throw into the balance some showing of the 'plausible justification' demanded by antecedent [to the enactment of section 1040 et seq.] case law [citations]." (*Ibid.*) Officer Bahash testified that the drug transaction took place in a gang area. The officer feared possible reprisals if the information was disclosed. Defendant offered nothing to support his claim that he needed the information. It is clear and defendant does not argue in this court (as he did below) that the location was privileged.

■ The issue in this case is whether the trial court committed reversible error once it sustained the privilege claim of Officer Bahash and did not strike the officer's testimony. ■ Under California law, once the privilege is claimed the trial court should conduct an in camera hearing pursuant to the procedural guidelines set forth in *People* v. *Superior Court*, *supra*, 19 Cal.App.3d at pages 530-532, to determine if the testimony relates to issues that are material. (*People* v. *Montgomery*, *supra*, 205 Cal.App.3d at p. 1019.) However, pursuant to section 1042, subdivision (a), the trial court is required to make an adverse finding only where the evidence is material. (*In re David W.* (1976) 62 Cal.App.3d 840, 847 [133 Cal.Rptr. 342].) Section 1042, subdivision (a) was enacted in 1965 and embodies due process concepts that were discussed in *United States* v. *Reynolds* (1952) 345 U.S. 1, 12 [97 L.Ed. 727, 735, 73 S.Ct. 528, 32 A.L.R.2d 382]. (See Assem. Com. on Judiciary, 29B West's Ann. Evid. Code (1966 ed.) § 1042, p. 649 [Cal. Law Revision Com. com., Deering's Ann. Evid. Code (1986 ed.) § 1042, p. 247].)[5] Both section 1042, subdivision (a) and *Reynolds* require that the

---

[5]*Reynolds* was a civil case involving the federal government's refusal to disclose sensitive military documents in a tort action brought by the survivors of the victims of a airplane crash from a test project. In dicta, the court stated the government, in a criminal proceeding, may invoke the confidential privileges "only at the price of letting the defendant go free. . . . [I]t is unconscionable to allow it to undertake the prosecution and then invoke its governmental privileges to deprive the accused of anything which might be *material to his defense*." (Italics added.) (345 U.S. at p. 12, fn. omitted [97 L.Ed at p. 735].)

information be material for the government to suffer consequences in refusing to disclose the information.[6]

██ Defendant argues that based upon two California cases, *Montgomery* and *Hines*, location is always material and accordingly the judgment must be reversed because the trial court did not strike the testimony. We agree that current California case law holds that when the trial court determines that the location is material, the testimony of the officer should be stricken (*Hines* v. *Superior Court, supra*, 203 Cal.App.3d at p. 1236) or an adverse evidentiary finding must be made pursuant to section 1042, subdivision (a). (*People* v. *Montgomery, supra*, 205 Cal.App.3d at pp. 1018-1024.) However, if we adopt defendant's analysis, the trial court would be required to strike testimony in any case in which a confidential surveillance location is used regardless of its materiality under the facts of the particular case. We do not believe that such a mechanical result is either justified or mandated by law. The judgment in this case must be affirmed for a number of reasons.

On the specific facts of this case, the trial court did not abuse its discretion in determining that the exact location was not material. In discussing the

---

[6]Cases that have considered the consequences of invoking a surveillance location privilege in other jurisdictions have relied upon the United States Supreme Court decision in *Roviaro* v. *United States, supra*, 353 U.S. at pages 61-66 [1 L.Ed.2d at pp. 645-648]. *Roviaro* involved a governmental privilege for an informant's identity. The court held that the privilege is limited by fundamental requirements of fairness. (*Id.* at pp. 60-61 [1 L.Ed.2d at pp. 644-645].) The court concluded: "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action." (*ibid.*, fns. omitted.) Later, the Supreme Court concluded: "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." (*Id.* at pp.61-62 [1 L.Ed.2d at pp. 645-646].)

For example, the *Roviaro* balancing test was applied in the *United States* v. *Harley, supra*, 682 F.2d at p. 1020.) In *Harley*, an undercover officer purchased heroin from defendant at his home. Police officers observed the transaction from a surveillance location point which the government refused to disclose at trial. One officer used binoculars to observe the transaction while another videotaped it. A police officer testified that the location was about 20 to 30 yards from the drug transaction at about 10 to 12 feet from ground level. At trial the videotape was produced showing the officer's view of the transaction. *Harley* held that since defendant made no attempt to demonstrate the need for the evidence or the absence of alternatives for obtaining the evidence, the trial court properly applied the surveillance location privilege. (Accord, *United States* v. *Green, supra*, 670 F.2d at pp. 1155-1156; *State* v. *Williams, supra*, 571 A.2d at p. 1362; *Com* v. *Lugo, supra*, 548 N.E.2d at p. 1265; see also *United States* v. *Van Horn* (11th Cir. 1986) 789 F.2d 1492, 1507-1508 [electronic surveillance location privilege requires case by case balancing process]; *United States* v. *Cintolo* (1st Cir. 1987) 818 F.2d 980, 1001-1003 [electronic surveillance location].)

concept of materiality requiring disclosure of informant's identity, the California Supreme Court held: "The defendant's 'burden extends only to showing that "in view of the evidence, the informer would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial." [Citation.] "That burden is discharged, however, when defendant demonstrates a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant's exoneration." . . .' [Citation.]" (*Price* v. *Superior Court* (1970) 1 Cal.3d 836, 843 [83 Cal.Rptr. 369, 463 P.2d 721].) As stated above, the informant's identity and surveillance location issues are analogous; therefore, we hold that this is the appropriate standard for determining the materiality of a surveillance location. In this case, defendant had the burden of showing that in view of the evidence, there was a reasonable possibility that the location could constitute material evidence on the issue of guilt which would result in his exoneration. On the facts developed during direct and a cross-examination, we fail to see how knowing Officer Bahash's exact location would accomplish that purpose. Officer Bahash testified that he was standing behind the 219-221 building, at eye level, 15 feet away from the drug transaction. The drug transaction took place about 5:45 p.m. under good lighting conditions. The officer had an unobstructed view and did not use binoculars to observe the transaction. From his position, he observed defendant receive cash in exchange for a small object later identified as rock cocaine. The officer was standing close enough to observe defendant give the rock cocaine to Gomez who placed the cocaine in his right shirt pocket. Gomez was apprehended within two to three minutes after the officer broadcast Gomez's description over the police radio. Furthermore, defendant admitted making contact with a little "white guy" who wanted to buy drugs on the Sunday Gomez was arrested. Defendant made no attempt to demonstrate a need for the evidence or that alternative means for obtaining the evidence if needed were not available. Defendant did not prove or even offer evidence to indicate that there was some point within the 15 feet to the rear of the building that the officer could not have observed him due to an obstruction. As the trial court noted in denying the motion for new trial, it is difficult to imagine what more defendant could have gained by knowing the officer's exact location given the precise and extensive information that was brought out by defense counsel's cross-examination. It is on this basis that the case at bench is distinguishable from *Montgomery* and *Hines* which defendant relies upon to support his argument that the judgment must be reversed.

In both *Hines* and *Montgomery*, the officer made observations at a substantial distance under the questionable circumstances. In this case, the

observation was made 15 feet away from the drug transaction. In *Montgomery*, the trial court, on defendant's request, refused to strike portions of a police officer's testimony after a surveillance location privilege was upheld. The officer made his observations from a position 25 to 35 yards away. At the same time that he observed defendant, he was observing the activities of two other suspects. He observed defendant in an intersection flagging down cars and shouting that he had "Thai" for sale and forming a "T" both of which are names for a type of marijuana from Thailand. The officer observed defendant make contact with a woman and exchange a plastic baggie for currency. Although the woman's description was broadcast to other officers, she was not apprehended. As the officers moved in to arrest defendant, he ran into an apartment. The officers pursued him and heard the sound of a toilet flushing. Defendant came out of the restroom pulling up his pants. The officer observed only clear water in the toilet tank but recovered a plastic bag containing 22.70 grams of marijuana which although less than an ounce was more than sufficient for personal consumption and could be divided into 20 to 30 street packages for street sale. On these facts, the trial court found that the location was material but then refused to make an adverse ruling against the prosecution. The Court of Appeal held that because defendant demonstrated how the information affected the presentation of his defense he was entitled to an adverse finding which in *Montgomery* required dismissal of the case. The court noted that it was possible that due to the distance, the officer may have been unable to distinguish defendant's activities from the other suspects' activities. (*People* v. *Montgomery*, *supra*, 205 Cal.App.3d at pp. 1019-1023.)]

In *Hines*, the drug transaction took place 50 yards from the surveillance location. The officer watched the transaction through binoculars on an overcast day. The appellate court concluded that the magistrate committed error in sustaining the privilege since the information was material to the officer's ability to adequately observe the transactions. (*Hines* v. *Superior Court, supra*, 203 Cal.App.3d at pp. 1234-1235.) There is no basis in this case to conclude that in view of the evidence, the exact location would have been material on the issue of guilt. Accordingly, the officer's refusal to disclose his exact location did not deprive defendant of a fair trial (*Price* v. *Superior Court, supra*, 1 Cal.3d at p. 845) nor did the trial court abuse its discretion in sustaining the claim of privilege. (*In re Muszalski* (1975) 52 Cal.App.3d 475, 482-483 [125 Cal.Rptr. 281]; *State of California* ex rel. *Division of Industrial Safety* v. *Superior Court* (1974) 43 Cal.App.3d 778, 785-786 [117 Cal.Rptr. 726]; *People* v. *Gaulden* (1974) 36 Cal.App.3d 942, 961-962 [111 Cal.Rptr. 803].)

## V. DISPOSITION

The judgment is affirmed.

Boren, J., and Grignon, J., concurred.

A petition for a rehearing was denied June 10, 1991, and on June 13, 1991, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 21, 1991.