[No. B083219. Second Dist., Div. Two. Apr. 27, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
MOHAMMAD HAIDER, Defendant and Appellant.

**COUNSEL**

Patrick Condon, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Susan D. Martynec and Joseph P. Furman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

BRANDLIN, J.*—Mohammad Haider was convicted by a jury of one count of selling or giving away cocaine. (Health & Saf. Code, § 11352.) The trial court found Haider was previously convicted of possession of a controlled substance. (Health & Saf. Code, §§ 11350, 11370, subds. (a) & (c).) Haider appeals from the judgment.

*Judge of the Municipal Court for the South Bay Judicial District sitting under assignment by the Chairperson of the Judicial Council.

He contends (1) that the trial court erred in sustaining the prosecution's claim that the exact surveillance location was privileged, precluding cross-examination about the exact surveillance location, and denying appellant's motion to strike the testimony of the officer who stated he saw appellant give someone rock cocaine and (2) that there was insufficient evidence to support the conviction.

## FACTS

Viewed in the light most favorable to the judgment (*People* v. *Ceja* (1993) 4 Cal.4th 1134, 1138-1139 [17 Cal.Rptr.2d 375, 847 P.2d 55]), the evidence established that about 3:30 p.m. on November 11, 1993, Long Beach Police Officer Joseph Starbird saw Albert Alvarez give appellant some money and shortly thereafter saw appellant brush a small off-white rock into Alvarez's hands in an alley. The rock was later found to contain cocaine. It was about one-quarter inch long and about one-eighth inch wide and weighed .07 gram.

Officer Starbird observed the transaction from a rooftop that was about 100 to 120 feet from the alley. He used binoculars that made objects appear 10 times larger than their actual size. It was a sunny day. Between Officer Starbird and appellant was a six-foot high chain-link fence containing wooden boards. The building on whose roof Officer Starbird observed the transaction was two stories high, and the fence did not obstruct his view of the transaction since it was unnecessary for the officer to look through the fence. Appellant and Alvarez were dressed unlike each other and unlike other persons in the vicinity. When Officer Starbird and his partner approached appellant and Alvarez several minutes after Officer Starbird saw appellant brush the rock into Alvarez's hands, Alvarez dropped the piece of rock cocaine and a cocaine pipe. Appellant had $2 on his person. The street value of the cocaine was about $5.

In defense, appellant denied giving or selling any drugs to Alvarez. Appellant asserted he bought some rock cocaine in the alley, borrowed a pipe from Alvarez, smoked the cocaine, and returned the pipe to Alvarez.

## DISCUSSION

## I.

■ The government has a privilege to refuse to disclose the exact location of a surveillance site if the public interest in preserving the confidentiality of that information outweighs the need for disclosure. (*In re Sergio M.* (1993) 13 Cal.App.4th 809, 813 [16 Cal.Rptr.2d 701].) Although the

statutory basis for the privilege to maintain the confidentiality of the surveillance location is Evidence Code section 1040,[1] that privilege has been analogized to the confidential informer identity privilege codified in Evidence Code section 1041.[2] (*People* v. *Walker* (1991) 230 Cal.App.3d 230, 235 [282 Cal.Rptr. 12]; *People* v. *Montgomery* (1988) 205 Cal.App.3d 1011, 1019 [252 Cal.Rptr. 779] [stating it is reasonable to afford even more protection to the confidentiality of a surveillance location than to the confidentiality of the identity of an informer since an informer may be able to hide].) If the court finds that a surveillance location is privileged, Evidence Code section 1042 provides the court must nonetheless make a finding adverse to the prosecution if the location is material to the defense.[3]

---

[1]Evidence Code section 1040 provides in pertinent part: "(a) As used in this section, 'official information' means information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made. [¶] (b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and: [¶] . . . [¶] (2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered. . . ."

[2]Evidence Code section 1041 provides in pertinent part: "(a) Except as provided in this section, a public entity has a privilege to refuse to disclose the identity of a person who has furnished information as provided in subdivision (b) purporting to disclose a violation of a law of the United States or of this state or of a public entity in this state, and to prevent another from disclosing such identity, if the privilege is claimed by a person authorized by the public entity to do so and: [¶] . . . [¶] (2) Disclosure of the identity of the informer is against the public interest because there is a necessity for preserving the confidentiality of his identity that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the identity of the informer be disclosed in the proceeding. In determining whether disclosure of the identity of the informer is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered. [¶] (b) This section applies only if the information is furnished in confidence by the informer to: [¶] (1) A law enforcement officer . . . ."

[3]Evidence Code section 1042 provides in pertinent part: "(a) Except where disclosure is forbidden by an act of the Congress of the United States, if a claim of privilege under this article by the state or a public entity in this state is sustained in a criminal proceeding, the presiding officer shall make such order or finding of fact adverse to the public entity bringing the proceeding as is required by law upon any issue in the proceeding to which the privileged information is material. [¶] . . . [¶] (d) When, in any such criminal proceeding, a party demands disclosure of the identity of the informant on the ground the informant is a material witness on the issue of guilt, the court shall conduct a hearing at which all parties may present evidence on the issue of disclosure. Such hearing shall be conducted outside the presence of the jury, if any. During the hearing, if the privilege provided for in Section 1041 is claimed by a person authorized to do so or if a person who is authorized to claim such privilege refuses to answer any question on the ground that the answer would tend to disclose the identity of

■ After an in camera hearing in the present case, the trial court denied appellant's motion for disclosure of the surveillance location. The trial court stated: "[T]he court finds the privilege to maintain the confidentiality of the exact location of the surveillance far outweighs the defendant's interest in the disclosure. The disclosure of the exact location would not constitute material evidence on the issue of guilt which would result in exoneration of the defendant."

Officer Starbird's testimony at the in camera hearing indicated that disclosure of the surveillance location would likely endanger occupants of the building whose rooftop was used for surveillance and would impair further investigation of narcotics offenses. The officer's testimony at the in camera hearing further indicated that Officer Starbird's view of appellant and Alvarez when money and the rock cocaine were exchanged was completely unobstructed. The evidence at trial also established that Officer Starbird's view of both exchanges was unobstructed.

At trial, defense counsel was permitted to question Officer Starbird about the existence of any obstructions, Officer Starbird's distance from the fence, Officer Starbird's angle of vision in observing appellant at the time of the transaction, and whether Officer Starbird saw appellant from the front, back, left side, or right side. On cross-examination, Officer Starbird stated that when he saw appellant drop the rock into Alvarez's hands, the officer was looking at appellant's left side, appellant was holding his right hand in a blade shape, appellant brushed the rock into Alvarez's hands with his left hand from a height just below appellant's shoulders, Alvarez's hands were about 12 to 14 inches lower, appellant was about 5 feet 9 inches tall, Alvarez was a couple of inches shorter, appellant was about 12 feet east of the fence, part of the fence was between the officer and appellant, the fence did not in any way block the officer's view of appellant's body, the officer was 100 to 120 feet from the fence, his angle of vision was about 30 degrees, Alvarez

the informant, the prosecuting attorney may request that the court hold an in camera hearing. If such a request is made, the court shall hold such a hearing outside the presence of the defendant and his counsel. At the in camera hearing, the prosecution may offer evidence which would tend to disclose or which discloses the identity of the informant to aid the court in its determination whether there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial. A reporter shall be present at the in camera hearing. Any transcription of the proceedings at the in camera hearing, as well as any physical evidence presented at the hearing, shall be ordered sealed by the court, and only a court may have access to its contents. *The court shall not order disclosure, nor strike the testimony of the witness who invokes the privilege,* nor dismiss the criminal proceeding, *if the party offering the witness refuses to disclose the identity of the informant, unless, based upon the evidence presented at the hearing held in the presence of the defendant and his counsel and the evidence presented at the in camera hearing, the court concludes that there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial."* (Italics added.)

stood closer than appellant to Pacific Coast Highway, Alvarez's right side was closest to Pacific Coast Highway, and Alvarez's back faced east. Appellant made no showing that there was any observation site on a rooftop of a 2-story building at a distance of 100 to 120 feet from the place where appellant and Alvarez stood when the exchanges occurred from which Officer Starbird would have been unable to see the transactions if the officer's angle of vision was approximately 30 degrees and appellant's left side was closest to the officer.

In *Hines* v. *Superior Court* (1988) 203 Cal.App.3d 1231 [251 Cal.Rptr. 28], a First Appellate District case, a police officer testified that, using binoculars, he saw a number of transactions in which something was apparently exchanged for money and that he believed the transactions involved narcotics. He stated his observation point was about 50 yards from the defendant, the day was somewhat overcast, and his view was unobstructed. The trial court upheld his assertion that under the official information privilege, the precise surveillance location should not be disclosed. The Court of Appeal held that the surveillance location was material because the defense needed that information to test the officer's observation and that the officer's testimony should therefore have been stricken. (*Id.* at pp. 1235-1236.) Unlike the situation in *Hines,* in the present case, as previously noted, the officer's observations occurred on a sunny day, the officer observed the exchanges from a closer location, and the officer testified that he saw an off-white rock being brushed into Alvarez's hands.

In *People* v. *Montgomery, supra,* 205 Cal.App.3d 1011, another First Appellate District case, the court held that the surveillance location was material to test the only observation of a sale of narcotics because, apart from the officer's testimony, there was no other direct evidence of the sale since the purchaser was not detained and the transaction was not photographed or otherwise memorialized. (*Id.* at p. 1022.) In contrast to *Montgomery,* in the present case the purchaser was detained and was observed discarding a piece of rock cocaine as the officers approached.

In *People* v. *Walker, supra,* 230 Cal.App.3d 230, Division Five of this court held that the precise surveillance location was not material because the officer stated that from behind a building he observed a drug transaction without binoculars under good lighting from a distance of 15 feet, the officer saw the defendant give a small object later identified as rock cocaine to the buyer, who, as in the present case, was apprehended within several minutes after the transaction, the defendant admitted that he contacted someone who wanted to buy drugs on the date of the buyer's arrest, and the defendant did not prove or offer evidence that there was some point within 15 feet to the

rear of the building from which the officer could not have observed him because of an obstruction. (*Id.* at pp. 237-238.)

In *In re Sergio M., supra,* 13 Cal.App.4th 809, a Sixth Appellate District case, the Court of Appeal held the surveillance location was not material because, using 35-power binoculars from a distance of less than 100 yards, the officer had an unobstructed view of the minor on a sunny day and no one else in the area was dressed similarly to the minor. (*Id.* at p. 814.) The court explained that, although there were locations within 100 yards of the minor from which the officer's view of the minor would have been obstructed, there were at least two locations at that distance from which one could see what the officer claimed to have seen. (*Id.* at p. 815.)

In *People* v. *Garza* (1995) 32 Cal.App.4th 148, 151 [38 Cal.Rptr.2d 11], another Sixth Appellate District case, an officer who was 40 or 50 feet away and across the street from the defendant and another man observed both men attempting to flag down cars at night by yelling " 'coke,' " waving, gesturing, and whistling. The officer broadcast detailed descriptions of both men and their activities. Based on the description of him, the defendant was apprehended. He had four bindles of cocaine in his pocket.

In *Garza* the Court of Appeal held that the exact surveillance location was not material because, if the officer's view had been obstructed or the officer had been too far away to hear the men, the officer would not have been able to describe the men and monitor their activities. (*People* v. *Garza, supra,* 32 Cal.App.4th at pp. 154-155.) In determining what showing is necessary to establish that a surveillance location is material, the *Garza* court relied on the analysis of *Anderson* v. *U.S.* (D.C. App. 1992) 607 A.2d 490, 497, which held: "[T]he defendant is obliged to show not only that there are locations in the area from which the view is impaired or obstructed, but also that there is some reason to believe that the officer was making his observations from such a location. Without some reason so to believe, the existence of obstructed locations is logically irrelevant."

We find the holdings in *Sergio M.* and *Garza* persuasive. However, *Garza* appears to read *Walker* as holding that a reasonable possibility of exoneration is necessarily shown by evidence that at some point within the area surveilled the officer could not have viewed the defendant because of some obstruction. (*People* v. *Garza, supra,* 32 Cal.App.4th at p. 154.) We do not read *Walker* as so holding. In stating that the defendant did not offer any evidence that there was some point within 15 feet to the rear of the building from which the officer could not have observed the defendant because of an

obstruction, the court did not hold that such evidence would necessarily render the surveillance location material. Instead, the court was merely describing an additional reason to support its conclusion that the trial court did not abuse its discretion in determining that the exact surveillance location was not material. (*People* v. *Walker*, *supra*, 230 Cal.App.3d at pp. 237-238.)

■ A determination of whether the trial court properly exercised its discretion in deciding that an exact location of a surveillance site should not be disclosed depends on the facts of the particular case. We do not read *Hines* and *Montgomery* as holding that whenever a surveillance location is relevant to test an officer's ability to observe, the location must be disclosed. Such an approach would render the privilege nugatory. In *People* v. *Walker*, *supra*, 230 Cal.App.3d 230, Division Five of this court rejected the defendant's assertion that, under *Montgomery* and *Hines*, the surveillance location is always material, explaining: "[I]f we adopt defendant's analysis, the trial court would be required to strike testimony in any case in which a confidential surveillance location is used regardless of its materiality under the facts of the particular case. We do not believe that such a mechanical result is either justified or mandated by law." (*People* v. *Walker*, *supra*, 230 Cal.App.3d at p. 237.)

■ Since the record of the in camera hearing and the trial established that Officer Starbird had an unobstructed view of the drug transaction with high-powered binoculars on a sunny day, the trial court properly sustained the privilege under Evidence Code section 1040 to maintain the confidentiality of the exact location of the surveillance site, properly did not make a finding adverse to the prosecution under Evidence Code section 1042, subdivision (a), and properly did not strike Officer Starbird's testimony. The officer's refusal to disclose the exact location of the surveillance site did not deprive appellant of a fair trial. (*People* v. *Garza*, *supra*, 32 Cal.App.4th at pp. 153-155; *In re Sergio M.*, *supra*, 13 Cal.App.4th at pp. 813-815; *People* v. *Walker*, *supra*, 230 Cal.App.3d at pp. 234-239; see *Anderson* v. *U.S.*, *supra*, 607 A.2d at p. 497.) In view of the questions defense counsel was permitted to ask Officer Starbird regarding his observation of the transaction, reasonable cross-examination was allowed. (See *People* v. *Walker*, *supra*, 230 Cal.App.3d at p. 238.)

## II.

■ Although appellant had only $2 on his person when arrested, the evidence that, using binoculars, Officer Starbird saw Alvarez give appellant some money and soon thereafter saw appellant brush into Alvarez's hands an

off-white rock later determined to contain cocaine and that the officer's view was not obstructed by the fence constitutes substantial evidence that appellant sold or gave away cocaine. (*People* v. *Cornejo* (1979) 92 Cal.App.3d 637, 659-660 [155 Cal.Rptr. 238].)

### DISPOSITION

The judgment is affirmed.

Fukuto, Acting P. J., and Nott, J., concurred.

A petition for a rehearing was denied May 12, 1995, and appellant's petition for review by the Supreme Court was denied July 27, 1995. Mosk, J., was of the opinion that the petition should be granted.