781 So.2d 440 (2001)
Caroline P. JUDD, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-2942.
District Court of Appeal of Florida, Fourth District.
February 28, 2001.
Rehearing Denied March 29, 2001.
*441 Carey Haughwout, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellant.
*442 Robert A. Butterworth, Attorney General, Tallahassee, and Frank J. Ingrassia, Assistant Attorney General, Fort Lauderdale, for appellee.
WARNER, C.J.
In contesting her conviction for possession of cocaine with intent to sell, appellant makes two claims of error which we conclude necessitate reversal for a new trial. First, the trial court erred in refusing to require an investigating detective to reveal the location from which he conducted surveillance of appellant. Because the record evidence fails to sustain the "personal safety" exception to the state's duty to disclose information a defendant needs to fully cross-examine a state witness, we reverse. Second, the trial court erred in excluding a nonsequestered surrebuttal witness without a Richardson[1] inquiry and without the inquiry regarding the potential harm and prejudice caused by the violation of the rule against sequestration as required under Dumas v. State, 350 So.2d 464 (Fla. 1977).

I. Facts
Conducting surveillance on a residence in West Palm Beach, Officer Weeks of the West Palm Beach Police Department spotted appellant walking out of her apartment and down the street. She looked around and then walked to a saw palmetto tree, placing an object from her right pocket into a palm frond of the tree. The officer suspected other people of putting drugs in that same tree. Appellant then sat down in front of her apartment. After witnessing appellant have a conversation with a man who had been raking leaves, the officer observed her return to the tree and walk back to the place where she had been sitting. She then handed the man an object which he placed in his mouth and then left.
About one-half hour later, a woman approached appellant and they conversed. Appellant went back to the palmetto again, returned, and the two women engaged in a hand to hand transaction. Soon after, another woman approached appellant and did the exact same thing. Appellant then left the area on a bicycle. Based upon his experience, the officer believed these were drug sales.
The officer instructed other officers to stop the last woman and appellant. However, no drugs were found on either one of them. Another officer searched the palmetto and found a container with cocaine rocks inside.
When the officer was cross-examined by the defense, he was asked his location while conducting the surveillance. The officer replied:
For the safety of the location, in which we have people that help the police department out, to protect their location and protect their property, we'd rather not give that location to the individuals who are actually selling drugs from those locations, for the simple fact that we're afraid that something might happen to that property.
Appellant objected because knowledge of the officer's location was necessary to cross-examine his ability to observe the events about which he testified. The court permitted appellant's counsel to inquire about the general ability of Weeks to observe the surrounding area, including the distance between him and the tree where the activity occurred and whether he was on the same level as appellant when observing her, but it refused to require the officer to disclose his specific location. During redirect, the officer testified that he was in a private residence at ground *443 level looking through an open window with an unobstructed view. He stated that he was approximately one hundred feet away.
Appellant testified in her defense and denied that the drugs found in the palmetto belonged to her. She drew a diagram of her lot for the jury and explained that her car was parked next to the tree on that day and that there was also a fence next to the tree and car. Next to the fence was her neighbor's house with windows right by the tree and fence.
On the day in question, appellant exited her house with her dog and had a conversation with the man raking the yard. She was eating some jelly beans she held in her hand and gave some to the man which he put in his mouth. Appellant then put the jelly beans in her pocket. Another woman approached, but appellant denied coming within five or ten feet of her. The third woman who came about had asked for money, and appellant eventually gave her some money.
Appellant testified that the police likely thought that she was going into the tree because the tree is next to the car, fence, and her neighbor's window. On that day, appellant spoke with her neighbor approximately three times through the window. Additionally, appellant stated that the tree (a saw palmetto) was very bushy, and if someone is behind the tree, no one can see what they are doing. She specifically testified that if someone was across the street they could not see anything but the back of the car.
The state recalled Officer Weeks in rebuttal, who testified that he was "almost positive" there was no car parked next to the tree on the day in question. He also stated that from where he was positioned he could see what was going on behind the tree, including what he observed appellant doing.
Appellant sought to call an unlisted witness, who had been listening to the trial. This witness would have testified that there was a car in front of the house on that day, contradicting the officer's testimony. The state pointed out that appellant's counsel had invoked the rule of sequestration at the commencement of the trial. Because of the invocation of the rule, the court refused to allow the witness to testify. The case then concluded, and the jury found appellant guilty of the charge, prompting this appeal.

II. Disclosure of Surveillance Location
Appellant's objection to the trial court's ruling preventing counsel from inquiring as to the officer's specific surveillance location is grounded on the defendant's right to cross-examination. Without knowing the officer's exact location, "[t]he trial court's ruling required defense counsel to trustnot testOfficer Weeks' testimony." (Initial Brief p. 13). While the officer claimed his view was unobstructed, appellant testified that the tree and the car would have obstructed any view from across the street, which is where the officer's testimony implied that he was.
The state argues that the officer was not required to disclose his location based upon the "surveillance location privilege," citing State v. Moss, 648 So.2d 206 (Fla. 3d DCA 1994). In contrast, Johnson v. State, 595 So.2d 132 (Fla. 1st DCA 1992), disapproved on other grounds, Heuss v. State, 687 So.2d 823 (Fla.1996), holds that there was no privilege to refuse to reveal an officer's location, either by constitutional right, statute, or rule. These two cases can be reconciled on their facts. In Johnson, the officer refused to reveal his location based upon his concern for his personal safety should he decide to use the same location again. There was no concern in that case for the protection of other persons *444 or property. In Moss, on the other hand, the officer was viewing the defendant's activities from inside a private residence, and the police had promised that the owner's identity would not be revealed. The privilege that the third district recognized in Moss was essentially the narrow privilege that the government has to refuse to disclose a confidential informant under certain circumstances. As the court noted, "those rules and procedures established for determining whether the identity of a confidential informant should be ordered disclosed are applicable." Id. at 207.
In State v. Hassberger, 350 So.2d 1 (Fla. 1977), the court stated, "[w]here disclosure of an informer's identity is relevant and helpful to the defense of an accused, or is essential to a fair determination of the cause, the privilege must give way." Id. at 2. The court then cited to the rule of fairness adopted by the United States Supreme Court in Roviaro v. United States, 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), in which the court stated:
We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
The Sixth Amendment right of an accused to confront the witnesses against him places severe restrictions on the privilege of nondisclosure. See Hassberger, 350 So.2d at 2. In examining these restrictions in a case where the identity of a witness is at issue, the Hassberger court looked to Smith v. Illinois, 390 U.S. 129, 131-2, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), which explained:
[w]hen the credibility of a witness is in issue, the very starting point in "exposing falsehood and bringing out the truth" through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.
. . . .
... Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test....
The Hassberger court, however, recognized, as did the United States Supreme Court, that where there is reasonable fear for the safety of the informant or his family, there is reason to prohibit disclosure of the informant's identity or his location. To balance the rights of the defendant with the safety of the informant, the court adopted the procedure set forth in United States v. Palermo, 410 F.2d 468 (7th Cir. 1969), to deal with the issue:
First, an actual, not implied, threat to the witness or to his family must be shown. Second, the government must disclose to the judge in camera the information sought to be withheld from the accused. The judge must then determine whether the facts must be disclosed, in order not to deny effective cross-examination to the defendant. His decision is reviewable on appeal. Finally, the accused must be allowed to show any special need for the information requested.

*445 We approve of the "personal safety" exception to the otherwise ordinary duty of the State to allow the defendant full access to its witnesses on cross-examination, and of the procedure outlined in Palermo, supra. We stress, however, that this exception is an exceedingly narrow one, and that all doubts must be resolved in favor of the accused's sixth and fourteenth amendment right to confront the witnesses against him.
Hassberger, 350 So.2d at 4-5 (footnote omitted).
Because the privilege against nondisclosure of the location of the officer in this case is grounded on the "personal safety" exception of the owner of the premises, similar to the confidential informant exception, the trial court should have assessed the state's obligation to disclose in light of Hassberger's requirements. That includes an inquiry into the nature of the threat to personal safety, an in camera inspection of the information sought to be withheld, and an opportunity for the accused to show any special need for the information requested.
In the instant case, the state failed to meet the first requirement preventing disclosure. The statement by Officer Weeks was a general policy statement that the police do not like to divulge the names of owners of property who assist the police because the police are afraid that something might happen to that property. Hassberger requires an actual, not implied, threat to the informant, or as here, the owner. Because the owner in this case was not known, the court could not have known whether that owner was in fear of his or her personal safety or the safety of the property. In this respect, this case is distinguishable from Moss where a private citizen had opened his/her home to the police in reliance on their promise that his/her identity would not be revealed. There is no such evidence in this case. For all we know, the officer was standing in a vacant residence owned by a nonresident corporation. There is no evidence that the officers received specific permission from this owner or made promises to the owner in order to use the premises.
Second, appellant's attorney showed why there was a special need for the information. Appellant testified that the bushy tree and the car would have blocked any view from across the street. Officer Weeks testified that despite the obstructions described by appellant, he had a clear view of the activity. Without evidence of his location, the defense could not test his credibility during cross-examination. Indeed, the jury had to "trust" the officer's observations as being true because his location was not revealed. This severely impaired the only defense appellant had to the charges. If, as Hassberger states, all doubts must be resolved in favor of the accused's full exercise of her Sixth Amendment right to confront witnesses against her, then on this record the court should have required the officer to disclose his location, as none of the tests in Hassberger were met.
Other states recognize a surveillance location privilege much broader than the narrow one Florida has heretofore recognized. See, e.g., Hollins v. Commonwealth, 19 Va.App. 223, 450 S.E.2d 397 (1994); People v. Walker, 230 Cal.App.3d 230, 282 Cal.Rptr. 12 (1991); Haider v. Director of Corrections, 992 F.Supp. 1192 (C.D.Cal.1998); People v. Criss, 294 Ill. App.3d 276, 228 Ill.Dec. 586, 689 N.E.2d 645 (1998); State v. Garcia, 131 N.J. 67, 618 A.2d 326 (1993). Some of those cases involve specific rules or statutes allowing the privilege. See, e.g., Walker, 282 Cal. Rptr. at 15; Garcia, 618 A.2d at 328 (applying statute authorizing "official information privilege"). However, these courts *446 have also determined that where the defendant shows a special need for the information, disclosure is warranted. In Garcia, for instance, the court held that where the testimony of the surveillance officer is the only evidence against the defendant, disclosure may be warranted. Id. at 334. Thus, even under these broader standards, appellant would have been entitled to the officer's location.

III. Excluding a Witness Based Upon Rule of Sequestration
The trial court excluded appellant's surrebuttal witness because the witness had been present in the courtroom during the trial. As appellant's counsel had invoked the rule of sequestration of witnesses, and the witness violated the rule, the trial court, without further inquiry, excluded the witness from testifying.[2] This was error.
When a party seeks to call a nonsequestered witness, a trial court must conduct an inquiry into whether the witness' testimony was substantially affected by the previous testimony the witness heard and to what extent would the testimony be different had he or she not heard the other witnesses. See Steinhorst v. State, 412 So.2d 332, 336 (Fla.1982); Dumas, 350 So.2d at 465. In Dumas, the court concluded that the defendant's Sixth Amendment right to present witnesses prevailed over the sequestration rule's purpose to prevent witnesses from shaping their testimony:
Considering the respective reasons for the rule of sequestration and for the constitutional right to present witnesses, we have no difficulty in concluding that the latter overrides any mere violation of the former. The rule of sequestration is a procedural device available to purify trial testimony when counsel for either side believes it to be advantageous. The rule must be invoked in the first instance by counsel. In our Anglo-American system of jurisprudence, no trial is invalid simply because one or more potential witnesses hear the testimony of other witnesses. We no more automatically bar the testimony of witnesses who have not been placed "under the rule" than we prevent a defendant from testifying on his own behalf simply because he has heard all the testimony in his trial before he takes the stand. When confronted with the Sixth Amendment right, then, a mere violation of the rule must give way.
Id. at 466. The state cites Pieze v. State, 243 So.2d 442 (Fla. 3d DCA 1971), in support of its proposition that a defendant waives the right to call witnesses who violate the sequestration rule. Pieze, however, was decided prior to Dumas and Steinhorst, and we follow the decisions of the supreme court.
Consistent with Atkinson v. State, 317 So.2d 807 (Fla. 4th DCA 1975), the court in Dumas held that the trial court could not preclude a witness from testifying in violation of the rule unless it found that the rule violation was with the knowledge, connivance, or consent of the defendant or his counsel. 350 So.2d at 465. Since the court did not make this inquiry, the supreme court reversed.
In the instant case, counsel sought to call the witness to rebut Officer Weeks' testimony that there was no car parked in front of the house on the date of the surveillance. When the state objected both on the grounds that the witness had not been listed in discovery and because *447 the witness had been present in the courtroom during trial, defense counsel remarked that he did not know that the witness "was gonna be there." We construe this to mean that counsel did not procure the attendance of the witness, nor knew of the witness' presence in the courtroom during testimony. By failing to conduct any inquiry into the matter as required by Steinhorst and Dumas, the trial court erred.
The state argues that appellant failed to preserve her claim to call the unlisted witness[3] because the witness was neither named nor was the substance of his proffered testimony made known. However, we conclude that although the name of the witness is not revealed in the transcript, all participants must have known who the witness was because the state moved to exclude him on the ground that he had violated the rule. Second, it is clear from the transcript that this witness would testify that appellant's car was in front of the palmetto tree on the day in question, contrary to Officer Weeks' rebuttal testimony.
For the foregoing reasons, we reverse appellant's conviction and sentence and remand for a new trial.
GROSS and HAZOURI, JJ., concur.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[2] Defense counsel stated that he had personal knowledge that appellant's car was there because he had visited the scene. However, as counsel, he was precluded by the rules of professional conduct from becoming a witness.
[3] A trial court must conduct a Richardson hearing when a party seeks to call an unlisted witness. See M.N. v. State, 724 So.2d 122, 123 (Fla. 4th DCA 1998). Further analysis of this issue is not necessary because the court did not exclude the witness on grounds of non-disclosure.