CONNER, J.
The defendant appeals his judgment and sentence for felony battery. He argues that the trial court erred in denying the presentation of favorable testimony by a defense witness because the witness was present in the courtroom, in violation of court ordered sequestration of witnesses. We agree with the defendant that the trial court did not conduct the proper analysis before ruling that the witness could not testify. We hold the error was not harmless, and we reverse for a new trial.

Factual Background and Trial Court Proceedings

The defendant was charged with felony battery to which the defendant asserted a stand-your-ground defense.[1] The trial court conducted a pretrial evidentiary hearing on the defense motion to dismiss, at which the rule of sequestration was invoked.[2] A brief summary of the evidence presented at the motion to dismiss hearing follows.
Before the incident, the defendant was engaged to the victim’s daughter. They had been living together for nine years and had three children. The defendant and the victim lived three or four houses away from each other.
The defendant and the victim agreed to do some plumbing work for a friend of the victim and decided they would split the money received for the job. The friend testified that the defendant did “about ninety-eight percent” of the work. The friend paid the victim $1150 for the job. However, the victim only gave the defendant $80 as his portion of payment. When the defendant discovered that he had been cheated, he testified that he confronted the victim and told him never to come to his house again or ask him for anything.
The defendant also testified that on the day of the incident, he was on his porch when the victim approached aggressively and asked for his granddaughter’s bicycle. The defendant told the victim that the bicycle was broken and then turned his head around to see what his son was doing. *1206 As the defendant turned his head back toward the victim, the victim lunged at him. The defendant testified, “so I stepped back and I threw two blows and that was it.” The victim fell to the ground. The defendant testified that he did not approach the victim or strike him again. Additionally, the defendant explained that the victim had previously threatened him with a shotgun four times, which put him “on the defensive side” when the victim approached him on the porch.
The victim testified that on the day of the incident, his granddaughter told him that her bicycle was broken. The victim and the granddaughter went to the defendant’s house so that the victim could try to fix the bicycle. As he and his granddaughter were approaching the defendant’s house, the defendant pushed the granddaughter. When the victim bent down to help his granddaughter, the defendant punched him in the face. The victim testified that he did not lunge at the defendant, raise his hands, or run towards the defendant before the defendant punched him. The victim also testified that the defendant punched him a second time.
During cross-examination, the victim acknowledged that the defendant told him the day before the incident that he never wanted to work with him again. However, the victim denied that the defendant told him that he did not want the victim to come to his house anymore or that the defendant did not “want anything to do with” him.
The defendant’s fiancée (the victim’s daughter) was present during the cross-examination of the victim. Immediately after the victim testified as to what the defendant told him the day before the incident, the court advised the fiancée, “you may step out.” The record vaguely indicates that the court perceived the fian-cée to have engaged in some kind of disturbance or distraction.
The court denied the motion to dismiss after considering the evidence and arguments presented at the hearing.
At trial, the victim essentially gave the same testimony that he gave at the stand-your-ground hearing. Consistent with his testimony at that hearing, the victim denied that the defendant told him the day before the incident never to come to his house again. However, unlike the motion to dismiss hearing, the denial came during direct examination, rather than cross-examination.
On the morning of the final day of trial, the State informed the court that the defense had just provided a revised witness list which included the defendant’s fiancée. The defendant’s counsel explained that when the victim testified the previous day that the defendant had not told him to stay away from his house, the defendant whispered to him that his fiancée had been present and heard the defendant tell the victim to stay away. Defense counsel contacted the fiancée around 9:00 p.m. after court ended, verified that she would testify that she heard the conversation, and gave the amended witness list to the State the next morning. Defense counsel told the court that striking the fiancée’s testimony was a severe sanction and that the court could hold a recess to allow the State to controvert her testimony or depose her.
The court stated:
My problem is this. I was told by the defense during the stand your ground motion and the hearing that she was not a witness. She sat through that whole proceeding. Unfortunately, that’s the bed that the defense laid. That testimony that apparently pricked [the defendant] was the same testimony that was given at the stand your ground hearing.[3] *1207 So, I think it’s not genuine on his part to tell his counsel at this point, and you are the same counsel that assisted during the stand your ground hearing. So I’m not going to allow her to testify.
She sat through this whole proceeding. The defense actually requested — the State or parties actually requested sequestration of those or the rule — invoke the rule of the witnesses not being here to hear that testimony. She’s had the benefit of hearing all of the testimony, sat here and the defense says she is not a witness, she’s not going to be a witness. So, I’m not going to allow her to testify.
The court allowed defense counsel to proffer the fiancée’s testimony. She testified that when she went with the defendant to the victim’s house the day before the incident, the defendant told him “that he knows [the friend] paid him in full, and from this point on ... don’t ask me for anything. And don’t come down to the house and ask for ehange, cigarettes or whatever, you know. From this point on, the relationship is over.” The State did not cross-examine the fiancée. The court verified with the fiancée that she had heard the parties say she would not be a witness and that she did not know she would be a witness until the night before the final day of the trial.
The defendant chose not to testify at trial. The only defense witness was the friend of the victim who requested and paid for the plumbing work. The jury found the defendant guilty of felony battery causing great bodily harm, permanent disability, or permanent disfigurement.

Legal Analysis

The defendant argues that the trial court erred by excluding his fiancée’s testimony because of a violation of the rule of sequestration without conducting an inquiry into whether her testimony changed as a result.[4] A trial judge’s decision to exclude evidence, including potential defense witnesses, is reviewed for an abuse of discretion. Scott v. State, 17 So.3d 766, 768 (Fla. 4th DCA 2009) (citations omitted).
When a defense witness violates the rule of sequestration, “a mere violation of the rule” must typically give way to the defendant’s Sixth Amendment right to present witnesses. Judd v. State, 781 So.2d 440, 446 (Fla. 4th DCA 2001) (quoting Dumas v. State, 350 So.2d 464, 466 (Fla.1977)). Application of the sequestration rule as a strict rule of law is error. Hines v. State, 719 So.2d 358, 359 (Fla. 1st DCA 1998); see also Wright v. State, 473 So.2d 1277, 1280 (Fla.1985), cert. denied, 474 U.S. 1094, 106 S.Ct. 870, 88 L.Ed.2d 909 (1986). Instead,
“[w]hen a party seeks to call a nonse-questered witness, a trial court must conduct an inquiry into whether the witness’ testimony was substantially affected by the previous testimony the witness heard and to what extent would the testimony be different had he or she not heard the other witnesses.”
Judd, 781 So.2d at 446 (citing Steinhorst v. State, 412 So.2d 332, 336 (Fla.1982); Dumas, 350 So.2d at 465)).
*1208 Before [the trial court] excludes testimony on the ground that the sequestration rule was violated, the trial court must determine that the witness’s testimony was affected by other witnesses’ testimony to the extent that it substantially differed from what it would have been had the witness not heard the testimony.
Wright, 478 So.2d at 1280; see also McKinzie v. State, 845 So.2d 316, 318 (Fla. 1st DCA 2003) (citing Steinhorst, 412 So.2d at 336).
In Dumas, our supreme court held, consistent with Atkinson v. State, 317 So.2d 807 (Fla. 4th DCA 1975), that it was error to preclude a witness who violated the rule of sequestration from testifying unless the trial court conducted an inquiry to determine if the rule violation was with the “knowledge, consent, procurement of the defendant or his counsel.” Dumas, 350 So.2d at 466. In Steinhorst, the supreme court noted that Dumas, which was decided seven years earlier, did not outline the circumstances under which a trial court may properly exclude a witness for violating the rule. Steinhorst, 412 So.2d at 336. It then stated, “[t]he test, however, is whether the testimony of the challenged witness was substantially affected by the testimony he heard, to the extent that his testimony differed from what it would have been had he not heard testimony in violation of the rule.” Id. Thus, a twofold inquiry must be made: first, whether the violation was intentional or inadvertent, and second, whether the witness’ testimony was substantially affected by the testimony heard as a result of the rule’s violation. See McKinzie; Charles W. Ehrhardt, Florida Evidence (2012 ed.), § 616.1 at 675.
In this case the trial court erroneously applied the sequestration rule as a strict rule of law, rather than balancing the violation of the rule against the defendant’s Sixth Amendment right to present witnesses. See Wright, 473 So.2d at 1280. Assuming that the court’s comments finding the defendant was “not genuine” in revealing the fiancée’s information until the day of trial, the court still failed to inquire into whether the fíancée’s testimony changed based upon hearing the testimony of the victim. While the record is scant on this issue, nothing suggests that she fabricated her testimony. The fact that the fiancée seemingly caused a disturbance in the courtroom, just after her father testified at the stand your-ground hearing that the defendant had not told him never to come to his house, provides an inference that she disagreed with his statement then, thus suggesting that her testimony would have contradicted her father.
The State argues that regardless of whether the trial court erred by excluding testimony based on a violation of the rule, the fiancée’s testimony would have been inadmissible because it constituted impeachment on a collateral matter. The rule on collateral impeachment is that “[w]hen a witness is testifying on cross-examination, any answer to a non-material collateral matter is conclusive and cannot be impeached by normal means of impeachment, including contradictory testimony by another witness.” Mitchell v. State, 862 So.2d 908, 913 (Fla. 4th DCA 2003) (emphasis added) (citation omitted). In this case, the fiancée’s testimony would have contradicted the victim’s testimony on direct examination, not cross-examination, so the rule on collateral impeachment would not apply.
Further, even if the fíancée’s testimony were to impeach the victim’s testimony during cross-examination, the subject of the testimony was material.
The test is whether the proposed testimony can be admitted into evidence for any purpose independent of the contradictions. There are two types of evi *1209 dence that pass this test: (1) facts relevant to a particular issue; and (2) facts which discredit a witness by pointing out the witness’ bias, corruption, or lack of competency.
Id. (citation omitted). Here, the issue of whether the defendant had prohibited the victim from visiting his home was relevant to support the defendant’s claim that he reasonably believed himself to be in danger when the victim arrived uninvited at his house.
The erroneous exclusion of a non-sequestered witness is subject to harmless error review. See Wright, 478 So.2d at 1280-81; McKinzie, 845 So.2d at 318. In this case, it cannot be said that the error was harmless beyond a reasonable doubt. The fíancée’s testimony affected the credibility of the defendant and the victim, which were both central aspects of the case. See Hines v. State, 719 So.2d 358, 359 (Fla. 1st DCA 1998) (finding that erroneous exclusion of non-sequestered witness was not harmless because it could have affected credibility of important State witnesses). The fíancée’s testimony may have also influenced the jury on the issue of whether the victim unlawfully entered the defendant’s property, an issue pertinent to the defendant’s stand-your-ground defense. Further, the defendant’s perceived need for self-defense may have seemed more reasonable if the jury believed that the victim was approaching the defendant’s house after the defendant explicitly prohibited the victim from going there. We therefore hold the error in excluding the fíancée’s testimony was not harmless and a new trial is required.

Reversed and remanded.

WARNER and CIKLIN, JJ„ concur.

. The defense was based on section 776.013, Florida Statutes (2011).

. The pretrial hearing was conducted pursuant to section 776.032, Florida Statutes (2011).

. The court was referring to the victim's testimony about the conversation the day before *1207 the incident, in which the victim claimed that the defendant did not tell him to never come to his house again.

. We do not address whether the trial court conducted a proper Richardson hearing because the fiancée’s testimony was excluded after the court determined she violated the rule of sequestration, not because she was an undisclosed witness. See Judd v. State, 781 So.2d 440, 447 n. 3 (Fla. 4th DCA 2001) ("A trial court must conduct a Richardson hearing when a party seeks to call an unlisted witness. Further analysis of this issue is not necessary because the court did not exclude the witness on grounds of non-disclosure.”) (citation omitted).