[No. A120636. First Dist., Div. Four. Apr. 13, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
MARCEL LEWIS, Defendant and Appellant.

## COUNSEL

Michael Willemsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Stan Helfman and John R. Vance, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RUVOLO, P. J.—**

## I.  INTRODUCTION

Appellant was convicted of selling rock cocaine, and possessing it for sale, based in part on what a police officer observed from a surveillance location. At trial, the prosecution declined to identify the location, citing the government information privilege codified in Evidence Code section 1040.[1] After a brief in camera hearing at which neither appellant nor his trial counsel was present, the trial court permitted the prosecution to assert the privilege, without striking the officer's testimony or making any finding adverse to the prosecution's case under section 1042.

On appeal, appellant argues that the identity of the location from which the officer made his observations was material. He contends the trial court therefore made an error of constitutional dimensions in permitting the prosecution to keep the location secret without excluding the officer's testimony, or making some other adverse finding, as a consequence.

We conclude that the surveillance location was not material because the police officer's testimony about observations from that location was sufficiently corroborated by independent evidence that there was no realistic possibility that disclosing the location would have enabled appellant to raise a reasonable doubt as to the veracity or accuracy of the officer's testimony. Therefore, we affirm appellant's conviction.

## II.  FACTS AND PROCEDURAL BACKGROUND

On April 30, 2007, at 1:45 p.m., San Francisco Police Officer Bryant was watching the area where Market Street intersects with Sixth Street and Taylor Street, from a location in or on a building, elevated above street level. Bryant was using "pretty powerful" binoculars to look for narcotics transactions on the street. He saw a man, later identified as appellant, standing on Market at the corner of Market and Taylor, about 50 to 100 feet away from Bryant's location. A woman approached appellant, holding money. After a brief conversation, appellant pulled out a plastic baggie, from a location that Bryant did not recall. Appellant reached into the baggie, took out an object,[2]

---

[1] All further statutory references are to the Evidence Code unless otherwise stated.

[2] Bryant testified, based on his experience, that it was unusual for a drug dealer to sell unwrapped pieces of rock cocaine directly from a plastic baggie rather than carrying them prewrapped for sale and concealed in the dealer's clothing. It was also unusual to see a drug

and handed it to the woman; she then gave him some money, the denominations of which Bryant could not discern. Bryant testified that he had an unobstructed view of the transaction, and that his ability to observe it was not diminished by any weather conditions.

After the transaction was complete, Bryant transmitted a description of the woman to Officers Yick and Mackenzie by police radio, and watched as they arrested her. Yick and Mackenzie drove up to the woman from behind as she walked north on Taylor. When their car was a few feet away from her, she dropped an object, which the officers retrieved, and which they believed, based on their experience, was a small rock of cocaine.[3] The object was not wrapped in anything when the woman dropped it. After the officers detained the woman and picked up the object, Yick reported to Bryant by radio that they had recovered what they thought was a narcotic. At that point, Bryant quickly turned his attention back to appellant. Appellant was still where he had been when his transaction with the woman occurred, but he soon crossed Market and began walking south along the east side of Sixth. Bryant's view of appellant was still unobstructed.

Bryant then transmitted appellant's description, location, and direction of movement to Officers Pedroza and Forneris. Forneris saw more than one person wearing clothing matching the description Bryant had given, and asked Bryant for clarification. Bryant responded that the seller was bald or had a shaved head, and Pedroza then knew that it could not be the other person in similar clothing, because that person had dreadlocks.[4] Bryant continued to watch and direct Pedroza and Forneris as they followed appellant, who began to run when he saw the officers, discarding an empty plastic bag as he fled. Appellant was farther away from Bryant when he was arrested than he had been during his transaction with the woman, but Bryant could still see him clearly.

Within three or four minutes after the transaction occurred, Pedroza and Forneris caught up with appellant, on Sixth Street between Market and Stevenson, and detained him. Bryant then left his surveillance location and went to meet up with Pedroza and Forneris.

dealer in that location at that time, given that most of the drug dealers in the area had moved from Market onto Turk or Taylor due to police activity.

[3] The evidence at trial established that the object dropped by the woman was a piece of rock cocaine weighing 0.32 grams. A police expert testified that a buyer in the area of Sixth and Market would pay $10 for a rock of that size.

[4] Bryant testified that during the time that he was observing appellant, he did not notice any other bald Black males wearing similar clothing.

A search revealed that appellant had some rock cocaine hidden in his sock, later determined to weigh 2.25 grams.[5] A police expert witness testified, based on the circumstances of the case, including the amount of the cocaine, that appellant possessed the drug for sale. The expert conceded, however, that a quantity of 2.25 grams could be possessed for personal use. Appellant apparently did not have a significant amount of money on him when he was arrested, but there was evidence that sellers of illegal drugs sometimes discard or dispose of their cash if they think they are about to be arrested. The record showed that appellant could have done this, without Bryant seeing him, within the approximately two minutes that passed while Bryant was watching Yick and Mackenzie follow and arrest the woman.

Appellant was charged with one count of selling cocaine, and one count of possession of cocaine for sale. (Health & Saf. Code, §§ 11352, subd. (a), 11351.5.) Appellant made a pretrial motion for the disclosure of Bryant's surveillance location, and reiterated it outside the jury's presence after Bryant invoked the privilege during his testimony. After a brief in camera hearing, the trial court denied the motion.

A jury found appellant guilty on both counts. At a bifurcated court trial on appellant's two prior convictions, appellant admitted both convictions. One of them was incorrectly charged, however, so the trial court found that only one of the priors was proven. On February 5, 2008, appellant was sentenced to a total of seven years in prison. This timely appeal ensued.

## III.  DISCUSSION

■  The trial court permitted Bryant to withhold the identity of his surveillance location under section 1040. This statute provides a privilege for nonpublic "information acquired in confidence by a public employee in the course of his or her duty," the disclosure of which would be "against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice . . . ." In *Hines v. Superior Court* (1988) 203 Cal.App.3d 1231 [251 Cal.Rptr. 28] (*Hines*), this court held that the location of a police surveillance post falls within the ambit of the privilege granted by section 1040. Appellant does not challenge that holding, nor does he argue that it was improperly applied in this case.

---

[5] Bryant conceded on cross-examination that it was unlikely the baggie was in appellant's sock at the time he pulled it out to retrieve the rock cocaine he sold to the woman.

■ What appellant does argue is that as a condition of upholding the prosecution's invocation of the section 1040 privilege, the trial court should have stricken Bryant's testimony about his observations, or made an appropriate factual finding adverse to the prosecution, under section 1042. Section 1042 provides that when the trial court in a criminal case permits the prosecution to invoke the section 1040 privilege, the court "shall make such order or finding of fact adverse to the [prosecution] as is required by law upon any issue in the proceeding to which the privileged information is material." (§ 1042, subd. (a).) This provision in section 1042 is intended to preserve the constitutionality of the section 1040 privilege by ensuring that its application does not detract from the constitutional rights of criminal defendants to confrontation, cross-examination, and a fair trial. (See *People v. Montgomery* (1988) 205 Cal.App.3d 1011, 1022–1023 [252 Cal.Rptr. 779] (*Montgomery*); *People v. Superior Court* (*Biggs*) (1971) 19 Cal.App.3d 522, 528–530, 534 [97 Cal.Rptr. 118] [discussing related privilege to withhold identity of confidential informant]; see also *Roviaro v. United States* (1957) 353 U.S. 53, 58–62 [1 L.Ed.2d 639, 77 S.Ct. 623] [same]; *United States v. Reynolds* (1953) 345 U.S. 1 [97 L.Ed. 727, 73 S.Ct. 528] [seminal case on government secrets privilege].)

Both parties recognize there is only a small constellation of published California appellate opinions—six in all, and all involving drug dealers—that have applied sections 1040 and 1042 in the context of police testimony about observations made from a surveillance location as to which the prosecution had asserted the section 1040 privilege. As we discuss below, while these cases are not entirely consistent, a legal standard emerges from these opinions from which courts can determine under what circumstances an adverse finding under section 1042 is required.[6]

The first of the six cases was *Hines, supra,* 203 Cal.App.3d 1231, in which our predecessors in this division held as a matter of first impression that the section 1040 privilege applies to surveillance locations. The *Hines* court went on to reject the Attorney General's argument that no adverse finding was required by section 1042 in that case because the police officer's surveillance location was not material. The opinion noted that the Attorney General "concedes that 'what is important is whether or not [the testifying police officer] was able to adequately observe the [narcotics] transactions' " of which the defendant was accused, and stressed that "[t]his was the very issue to which the privileged information was material." (203 Cal.App.3d at p. 1235.) The court concluded that because the prosecution's invocation of

---

[6] One commentator has noted that, because these cases are not entirely consistent, the California Supreme Court should intervene to clarify the applicable standard. (See Comment, *Ripe for Resolution: A Critique of the Surveillance Post Privilege* (2002) 36 U.S.F. L.Rev. 1067, 1094–1097.)

the privilege resulted "in depriving the [defendant] of his fundamental right to cross-examination on a material issue, an adverse finding [was] mandated by section 1042 . . . ." (*Ibid.*)

In *Hines*, the court advised that the appropriate adverse "order or finding" (§ 1042, subd. (a)) would be an order striking the officer's testimony regarding his observations, from the privileged location, of the defendant's narcotics sale activities. (*Hines, supra*, 203 Cal.App.3d at p. 1236.) Because such an order, in the case before it, would leave the prosecution without evidence sufficient to support the information filed against the defendant, the court held that the defendant's motion to dismiss under Penal Code section 995 should have been granted.

A few months after *Hines* was decided, *Montgomery, supra*, 205 Cal.App.3d 1011 was decided by Division Three of this district. *Montgomery* involved a defendant charged with selling drugs, and the evidence against him consisted, in part, of observations of his activities by a police officer from a surveillance location which the prosecution declined to identify. The principal issue in the case was whether the trial court had conducted the requisite inquiry to determine whether the section 1040 privilege was properly invoked with regard to the surveillance location (205 Cal.App.3d at pp. 1020–1022), an issue not presented on this appeal.

After determining that the proper procedure had not been followed, the court in *Montgomery* went on to comment that if, after a hearing on remand, the trial court were to uphold the prosecution's invocation of the privilege, the trial court would be obligated, under section 1042, to strike the testimony of the police officer regarding his observations from that location. (*Montgomery, supra*, 205 Cal.App.3d at pp. 1022–1023.) In that connection, the court opined that "the information [about the location] was material on the issue of guilt or innocence . . ." because "[t]he purpose of the defense learning the surveillance location was to test the only observation of the [drug] sale itself." (*Id.* at p. 1022.) The court went on to note that in the case before it, this information "was particularly material because there was no other direct evidence of the sale; the purchaser had not been detained, and the transaction had not been photographed or otherwise memorialized. [Citation.] Also, the observation of the sale formed an essential basis for the expert testimony that [the defendant] possessed [the drug] for sale. Under these circumstances, sustaining the privilege seriously affected [the defendant's] fundamental right of cross-examination as to both counts." (*Id.* at pp. 1022–1023, fn. omitted.)

Three years later, the Second District issued an opinion in a surveillance location privilege case that resolved the section 1042 issue against the defendant. In *People v. Walker* (1991) 230 Cal.App.3d 230 [282 Cal.Rptr. 12], the court upheld the trial court's refusal to strike the observing officer's testimony, holding that "[o]n the specific facts of this case, the trial court did not abuse its discretion in determining that the exact location was not material." (*Id.* at p. 237.) In that case, the defendant was seen by a police officer selling drugs near the rear of a building. The officer testified that his observations had been made at eye level from 15 feet away about 5:45 p.m., under good lighting conditions and without binoculars. (*Id.* at p. 238.) The defendant "did not prove or even offer evidence to indicate that there was some point within the 15 feet to the rear of the building that the officer could not have observed him due to an obstruction." (*Ibid.*) Thus, the court concluded, "it is difficult to imagine what more [the] defendant could have gained by knowing the officer's exact location given the precise and extensive information that was brought out by defense counsel's cross-examination." (*Ibid.*) On that basis, the court distinguished *Montgomery, supra,* 205 Cal.App.3d 1011, and *Hines, supra,* 203 Cal.App.3d 1231, both of which it characterized as involving "observations [made] at a substantial distance under the [*sic*] questionable circumstances." (*Walker, supra,* 230 Cal.App.3d at p. 238.)

The next published opinion to consider the issue was the first of two filed by the Sixth District. In *In re Sergio M.* (1993) 13 Cal.App.4th 809 [16 Cal.Rptr.2d 701] (*Sergio M.*), a minor was found to have possessed and offered marijuana for sale, based in part on a police officer's observations through binoculars, from within 100 yards, during the afternoon of a clear, sunny day. The officer watched the minor approach a vehicle that had stopped on the roadway; converse with a passenger who got out of the vehicle; retrieve an object from a plastic bag inside a paper bag that was hidden behind a fence; and exchange the object for paper currency which the minor received from the passenger. The officer testified that nothing obstructed his view of the minor's activities, but the prosecution invoked the privilege as to the exact location from which the officer made his observations. The vehicle was stopped a few minutes later by another officer, who confiscated a small bag of marijuana from the passenger. The officer then went to the location from which the minor had retrieved the object he gave the passenger, and found a paper bag containing a plastic bag holding numerous small packages of marijuana. (*Id.* at pp. 811–812.) A defense investigator later went to the location at which the minor had been observed, and determined that within 100 yards, there were locations from which the view of the spot was obstructed by shrubbery, trees, or fences. (*Id.* at p. 812.) However, the trial

court found that there were also at least two locations within 100 yards where the officer could have made the observations to which he testified. (*Id.* at p. 815.)

The *Sergio M.* court held that section 1042 did not require an adverse finding in that case, because the exact location of the officer's surveillance post was not material. The officer's testimony as to his observations, including the location and exact description of the bag from which he observed the minor remove the object sold to the passenger, was corroborated by the officer's later retrieval of a bag matching that description from the same location, as well as by the passenger's possession of a bag of marijuana. (*Sergio M., supra*, 13 Cal.App.4th at pp. 814–815.) Given these facts, the court declared itself unable "to see how the disclosure of [the officer's] exact location would result in the minor's exoneration." (*Id.* at p. 814.)

Two years after *Sergio M., supra*, 13 Cal.App.4th 809, the Sixth District decided *People v. Garza* (1995) 32 Cal.App.4th 148 [38 Cal.Rptr.2d 11] (*Garza*). Garza was convicted of possessing cocaine for sale after a police officer saw him and an accomplice standing on the sidewalk waving and shouting "coke" at passing cars. When arrested nearby shortly afterwards, the defendant had a total of about two grams of cocaine in four half-gram packages in his pocket.

The defendant in *Garza* filed a habeas corpus petition together with his direct appeal, contending that his trial counsel rendered ineffective assistance by failing to move for the disclosure of the location from which the officer observed him. In assessing this contention, the court first noted that section 1042 does not require an adverse finding or other remedy unless there is a reasonable possibility that nondisclosure of the privileged information might deprive the defendant of a fair trial.[7] (*Garza, supra*, 32 Cal.App.4th at pp. 153–154.) The court went on to opine that the defendant had not met this requirement in the case before it, because the police officer conducting the surveillance had been able to broadcast detailed descriptions of the defendant and his accomplice, and their activities, over the radio to other police officers as he made his observations. Because this would not have been possible unless the officer actually had a clear view of the suspects, the court held it was not reasonably possible that disclosure of the officer's location

---

[7] The *Garza* court criticized *Montgomery, supra*, 205 Cal.App.3d 1011 on this point, noting that *Montgomery* assessed only whether the disclosure was material on the issue of guilt or innocence, and did not go on to determine whether disclosure would have resulted in a reasonable possibility of exoneration. *Garza* opined that a surveillance location is always material, and that the Legislature could not have intended, by using the term "material" in section 1042, to require that the trial court strike officers' testimony about surveillance observations in every instance in which the prosecution asserts the section 1040 privilege as to the surveillance location. (*Garza, supra*, 32 Cal.App.4th at pp. 155–156.)

would have exonerated the defendant, and therefore the location was not material. (*Id.* at pp. 154–155.) Moreover, the quantity of cocaine found in the defendant's possession was sufficient to establish possession for sale even without the evidence obtained from the officer's observations. Thus, the court held that the ineffective assistance of counsel claim was without merit, and denied the habeas corpus petition. (*Id.* at p. 155.)

Finally, the most recent case on the issue is *People v. Haider* (1995) 34 Cal.App.4th 661 [40 Cal.Rptr.2d 369] (*Haider*), decided by Division Two of the Second District. In that case, the police officer conducted the surveillance from the roof of a two-story building that was 100 to 120 feet away from the alley in which the defendant was located. The officer was looking through binoculars that magnified his view by a factor of 10, on the afternoon of a sunny day. The officer saw a man, later identified as Albert Alvarez, give the defendant some money, and shortly afterwards, saw the defendant brush a small off-white rock, later determined to be cocaine, into Alvarez's hands. Soon afterwards, the officer and his partner approached the defendant and Alvarez, who dropped the cocaine rock and a pipe. The defendant had only $2 on him when the officers arrested him, and testified in his defense that he had bought some cocaine from Alvarez and borrowed Alvarez's pipe in order to smoke it. (*Id.* at p. 664.)

At the defendant's trial in *Haider*, the prosecution asserted the section 1040 privilege as to the identity of the building whose rooftop had been used by the officer as a surveillance location. Defense counsel was permitted, however, to cross-examine the officer as to the existence of any obstructions; the officer's distance from a fence in the area; the officer's angle of vision; and the direction from which the officer observed the defendant. The officer testified in detail as to these facts, and precisely described the position of the defendant's hand and how he moved it when he transferred the cocaine into Alvarez's hands. The defendant did not make any showing that there was any second-story rooftop within 100 to 120 feet of his location, at an angle consistent with the officer's testimony, from which the officer would not have been able to see the defendant due to an obstruction blocking the officer's view. (*Haider, supra*, 34 Cal.App.4th at pp. 666–667.)

The court in *Haider* held that the trial court properly denied the defendant's motion to strike the officer's testimony under section 1042. (*Haider, supra*, 34 Cal.App.4th at p. 669.) *Haider* distinguished both of the earlier cases that had required that testimony be stricken: *Hines, supra*, 203 Cal.App.3d 1231, on the basis that unlike in *Hines*, the observations in

*Haider* were taken on a sunny day, the officer's observation post was closer to the defendant, and the officer actually saw the defendant brush the cocaine rock into Alvarez's hands; and *Montgomery, supra,* 205 Cal.App.3d 1011, on the basis that the officer's testimony in *Montgomery* was not corroborated by other evidence, whereas in *Haider,* the police saw Alvarez discard a piece of cocaine as they approached him and the defendant. (*Haider, supra,* 34 Cal.App.4th at pp. 667–668.)

The *Haider* court cited *People v. Walker, supra,* 230 Cal.App.3d 230, and *Sergio M., supra,* 13 Cal.App.4th 809, with approval, and stated that it found the holdings in *Sergio M.* and in *Garza, supra,* 32 Cal.App.4th 148, to be persuasive. (*Haider, supra,* 34 Cal.App.4th at pp. 667–668.) However, *Haider* criticized *Garza* for what the court believed to be a misreading of *Walker,* opining that *Walker* should not be read as holding that a reasonable possibility of exoneration is *necessarily* shown by evidence that there was some location consistent with the officer's description of the surveillance location from which the officer could *not* have seen the events to which the officer testified. Rather, *Haider* viewed this as simply one of several factors supporting the *Walker* court's conclusion that the trial court did not abuse its discretion in ruling that the surveillance location was not material. (*Haider, supra,* 34 Cal.App.4th at pp. 668–669.)

The *Haider* court noted that the record before it showed the officer had an unobstructed view through binoculars on a sunny day, and that defense counsel was permitted to cross-examine the officer regarding his observations of the defendant's interaction with Alvarez. Accordingly, the court concluded that "[t]he officer's refusal to disclose the exact location of the surveillance site did not deprive [the defendant] of a fair trial," so the trial court properly permitted the prosecution to assert the privilege without striking the officer's testimony. (*Haider, supra,* 34 Cal.App.4th at p. 669.)[8]

In the case before us, appellant's counsel argues that the later cases from other districts permitting the trial court to uphold the privilege without

---

[8] The defendant in *Haider, supra,* 34 Cal.App.4th 661, later filed a petition for habeas corpus in federal district court, contending that his Sixth Amendment right of confrontation had been violated by the California trial court's ruling barring his trial counsel from cross-examining the officers about their exact surveillance location. (*Haider v. Director of Corrections* (C.D.Cal. 1998) 992 F.Supp. 1192, 1193.) The federal district court held that California's recognition of what it termed a "qualified surveillance post privilege" (*id.* at p. 1197) did not contravene the defendant's federal constitutional rights, because given the facts of the case, the "exact surveillance location was . . . immaterial to [the defendant's] guilt or innocence" (*id.* at p. 1198). The court based this conclusion on the fact that the defendant's "identity and participation in the underlying drug transaction" were never disputed (*id.* at p. 1197), and neither was the officers' identification of him, nor was there any evidence that there was any location consistent with the officers' testimony from which their view of the defendant and Alvarez would have been instructed or impaired (*id.* at p. 1198).

making an adverse finding cannot be reconciled with this district's earlier decisions in *Hines* and *Montgomery*. He also argues that the reasoning of the later cases results in effectively nullifying the adverse finding requirement of section 1042, contending that those cases recognize the materiality of a surveillance location only if the defendant can demonstrate that the observations were, or could have been, made from a location with an obstructed view, and that such a showing is impossible to make unless the location is disclosed. We disagree, for two reasons.

■ First, the section 1040 privilege does not prevent a defendant from cross-examining the testifying officer about the distance and angle of view from which the officer made the observations. In this case, for example, the trial court properly permitted appellant's trial counsel to examine Bryant freely with respect to all aspects of his observations, with the sole exception of the exact location from which they were taken.[9] The information derived from such cross-examination should be sufficient to permit the defendant to determine whether any of the potential surveillance locations—i.e., those meeting the officer's description in terms of distance and angle—are in fact subject to obstructions making it difficult or impossible to obtain a clear view of the defendant's position at the time of the events described in the officer's testimony.

■ Second, and more significantly, our analysis of the published cases reveals that a standard of materiality emerges that is both consistent with the results of virtually all of the published cases (with the exception of *Hines, supra*, 203 Cal.App.3d 1231, which we will discuss *post*), and with the wording of the applicable statutes. That standard is as follows: the location from which the surveillance was performed is not material, for the purpose of section 1042's adverse finding requirement, if the accuracy of the testifying officer's testimony about the surveillance observations is unquestioned, or at least is sufficiently corroborated by independent evidence such that there is no realistic possibility that disclosing the surveillance location would create a reasonable doubt in the minds of a reasonable jury about the officer's veracity.

For example, in *People v. Walker, supra*, 230 Cal.App.3d 230, the observing officer transmitted the description of the cocaine buyer to another officer, who arrested the buyer. The arresting officer found cocaine in the same

---

[9] Commendably, the trial court here also permitted appellant's trial counsel to suggest questions that he wanted posed to the officer at the in camera hearing. Our review of the sealed transcript indicates that the court did in fact pose counsel's suggested questions to Bryant. Nothing in the sealed transcript indicates that disclosure of the surveillance location would have cast doubt on the veracity of Bryant's testimony about his observations, or otherwise revealed potentially exculpatory evidence.

pocket of the buyer's shirt in which the observing officer testified he had seen the buyer conceal it. Moreover, the defendant did not present any evidence that the area in which the transaction occurred contained a location that was consistent with the officer's testimony about the surveillance location, but from which the officer would not have been able to make the observations about which he testified. Similarly, in *Sergio M., supra*, 13 Cal.App.4th 809, the officer's observations from the surveillance location were corroborated by the fact that another officer, to whom the observing officer had transmitted a description of the buyer, was able to identify the buyer based on that description. In addition, the buyer was in possession of drugs that were consistent with the observing officer's testimony, and after the observing officer left his surveillance location, he found physical evidence whose location and description matched those derived from his observations. Again, in *Haider, supra*, 34 Cal.App.4th 661, the buyer was observed by the arresting officer, as well as the officer conducting the surveillance, discarding a piece of rock cocaine matching the observing officer's description of the cocaine sold to the buyer by the defendant. In addition, the defendant presented no evidence that there was an alternate surveillance location matching the observing officer's description from which the officer would not have been able to make the observations to which he testified.

*Garza, supra*, 32 Cal.App.4th 148, had a somewhat different fact pattern, but it is still consistent with the materiality standard set forth above. In that case, the defendant was charged with possession of cocaine for sale. When arrested, he had four small packages of cocaine, weighing about one-half gram each (a total of two grams) in his jacket pocket. The prosecution presented evidence that possession of this quantity of cocaine, packaged in this manner, was sufficient to establish that the possession was for sale, even if the observing officer's testimony about the defendant's activities prior to his arrest were disregarded. Given this evidence, the location from which the observations were made clearly was not material.

*Montgomery, supra*, 205 Cal.App.3d 1011, one of the two cases holding that an adverse finding was required by section 1042, is also consistent with the consensus materiality standard. In that case, the defendant was charged with selling marijuana and possessing marijuana for sale. The buyer was not pursued or arrested, however, and there was no other evidence corroborating the observing officer's testimony that he had observed the defendant selling marijuana. When the defendant was arrested, the officers found less than an ounce of marijuana concealed nearby, an amount a reasonable jury could find only proved possession for personal use, not for sale. Under those circumstances the trial court itself found that the identity of the surveillance location was material. Therefore, it is unsurprising that the appellate court held that the observing officer's testimony should have been stricken under section 1042.

Appellant acknowledges that *Montgomery, supra,* 205 Cal.App.3d 1011, is distinguishable from the present case in that here, the woman identified as appellant's buyer was pursued, and the police saw her drop a rock of cocaine meeting Bryant's description of the one appellant sold to her. Appellant contends, however, that this distinction does not make a difference, because Bryant's surveillance testimony is the only evidence connecting the woman with appellant. This is not true. Bryant's testimony that he saw appellant sell cocaine to the same woman whom Yick and Mackenzie arrested is corroborated by the fact that those two officers were able to identify that woman based on Bryant's description of her appearance, location, and direction of travel. Had Bryant been unable to observe the transaction between appellant and the woman with sufficient clarity to identify the participants, he would not have been able to give an accurate description of the woman to Yick and Mackenzie.

We now come to the one published case that does not appear to conform to the materiality standard gleaned from the above authorities. *Hines, supra,* 203 Cal.App.3d 1231, is the earliest case in the series, and the principal issue addressed by the court was whether section 1040 applies to surveillance locations at all. (203 Cal.App.3d at p. 1234.) Having disposed of that issue adversely to the defendant, the court went on to address the "requirement of an adverse finding in section 1042. [Citation.]" (*Ibid.*) The Attorney General "concede[d] that 'what is important is whether or not [the officer] was able to adequately observe the transactions.' " (*Id.* at p. 1235.) Pointing out that "[t]he purpose of the defense in learning the location was to test that very observation . . ." and to learn whether the officer "actually ha[d] a clear and unobstructed view of the scene," the court held that the privileged information about the surveillance site was material, and therefore that section 1042 required an adverse finding. (203 Cal.App.3d at p. 1235.)

Thus, the court held in *Hines* that an adverse finding was required, even though, in that case, the observing officer's testimony was corroborated by the facts that the arresting officers were apparently able to identify the defendant from the observing officer's radioed description; were able to locate the defendant's "stash of narcotics" by following the observing officer's directions; and found a hypodermic needle in the defendant's possession. (*Hines, supra,* 203 Cal.App.3d at p. 1233.) However, in *Hines,* unlike in this case, the Attorney General apparently did not argue, as a basis for the inapplicability of the section 1042 adverse finding requirement, that the corroboration of the officer's testimony rendered the surveillance location immaterial. Thus, *Hines* did not consider that question, and accordingly does not stand for the proposition that section 1042 applies regardless of the degree to which the observing officer's testimony is corroborated. (See *Vasquez v. State of California* (2008) 45 Cal.4th 243, 254 [85 Cal.Rptr.3d 466, 195 P.3d 1049] [cases are not authority for propositions not considered];

*People v. Avila* (2006) 38 Cal.4th 491, 566 [43 Cal.Rptr.3d 1, 133 P.3d 1076] [same].) To the extent that *Hines* can be read to imply such a holding,[10] it has been superseded by the reasoning of the later cases, and we decline to follow it on that point.

Finally, we must address appellant's argument that section 1042 always requires an adverse order or finding, because a surveillance location is always material. He bases this contention on a reductio ad absurdum, pointing out that if a police officer testifies about observations made from a location that is *not* subject to the section 1040 privilege, the prosecutor cannot validly object, on materiality grounds, to the defense counsel's questions about where the officer was when the observations were made.

■ This argument is based on a conflation of materiality with relevance. Evidence does not need to be *material* in order to be admissible; it only needs to be relevant (and not otherwise objectionable). (§ 351 ["Except as otherwise provided by statute, all relevant evidence is admissible."]; *People v. Carter* (2005) 36 Cal.4th 1114, 1166–1167 [32 Cal.Rptr.3d 759, 117 P.3d 476]; see also § 210 [" 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."].) Obviously, the location from which a police officer's observations were made will normally be relevant, and an objection based on lack of materiality would not be well taken, simply because materiality is not required. ■ But by its plain terms, section 1042 does not require an adverse order or finding whenever a privileged surveillance location is relevant. It requires such measures only when the location is material. "[T]he test of materiality is not simple relevance; it is whether the nondisclosure might deprive defendant of his or her due process right to a fair trial. [Citation.]" (*Garza, supra,* 32 Cal.App.4th at p. 153.)

■ For all of the foregoing reasons, we conclude that the trial court did not err in upholding the section 1040 privilege as to Bryant's surveillance location without making any adverse order or finding under section 1042. Appellant does not contend that the trial court made any other reversible error, or that the evidence is insufficient to sustain his conviction if Bryant's testimony was properly admitted.

---

[10] As respondent points out, such a reading of *Hines* is undercut by the *Hines* court's reliance on *In re David W.* (1976) 62 Cal.App.3d 840 [133 Cal.Rptr. 342], in which privileged information about the location of a vehicle identification number was held to be immaterial because the accuracy of the number itself was verified by an independent court-appointed expert. (*Hines, supra,* 203 Cal.App.3d at pp. 1234–1235, citing *In re David W., supra,* 62 Cal.App.3d at pp. 846–847.)

## IV.  DISPOSITION

The judgment is affirmed.

Sepulveda, J., and Rivera, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 22, 2009, S173094. George, C. J., and Kennard, J., did not participate therein.