File 2/28/13  In re J.E. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re J.E., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>J.E.,<br><br>    Defendant and Appellant. | G046215<br><br>(Super. Ct. No. DL041131)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Nick A. Dourbetas, Judge.  Reversed.

Marianne Harguindeguy Cox, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Lilia E. Garcia and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

The juvenile court found 17-year-old J.E. possessed cocaine base for sale and actively participated in a criminal street gang. Minor contends the juvenile court violated Evidence Code sections 1040 and 1042 (all statutory citations are the Evidence Code unless noted), and constitutionally erred in permitting the prosecution to maintain the confidentiality of the testifying police officer's surveillance location without striking the officer's testimony, or making some other adverse finding against the prosecution. For the reasons expressed below, we reverse.

I

FACTS AND PROCEDURAL BACKGROUND

The Orange County District Attorney filed a Welfare and Institutions Code section 602 petition alleging minor possessed cocaine base for sale (Health & Saf. Code, § 11351.5) to benefit a criminal street gang (Pen. Code, § 186.22, subd. (b)) and actively participated in a criminal street gang (Pen. Code, § 186.22, subd. (a)) on September 17, 2011.

At the jurisdictional hearing, Santa Ana Police Officer Rashad Wilson testified he was a gang detective on duty at approximately 12:45 p.m. on September 17, 2011. He and his partner, Justo Capacete, were in a "slick top" (no overhead lights) marked patrol car in the vicinity of 800 South Townsend Street. This was a "high gang activity" area, as well as a "high narcotic activity [area] for sales."

From a vantage point approximately 25 yards away, Wilson saw minor and another juvenile, M.B., in the west alley behind the apartment building at 802 South Townsend. The weather was clear and sunny and nothing obstructed Wilson's view. The minors stood about three feet apart, conversing and gesturing with their hands. Wilson observed three apparent drug transactions in the span of 20 minutes. Each time, minor whistled at or flagged down a passing vehicle, and then directed M.B. over to the stopped vehicle. M.B. approached the vehicles, contacted a person on the driver's side, and received cash from the occupant in exchange for an off-white substance in a baggie taken

2

from his pocket. The vehicles drove off.  During the transactions, minor scanned the alley in both directions.

Concluding they had witnessed hand-to-hand narcotics sales, the officers drove northbound up the alley.  Minor yelled "police," and he and his companion ran eastbound together. The officers left their car and detained minor almost immediately. Capacete watched minor as Wilson continued after M.B., who ran through a breezeway and across Townsend Street into another apartment complex.  M.B. slipped behind a stairwell, removed a plastic baggie from his right front pocket, and placed it in the stairwell.  He then came back out and sat on the stairs.

Wilson searched the stairwell and found a baggie weighing two grams and containing a useable quantity of 523 milligrams, of cocaine base. Wilson opined the cocaine base was possessed for sale.  Two grams of base, or crack, cocaine could sell for $25 to $80.  Wilson also found $80 in cash and a cell phone in M.B.'s pockets.

Wilson interviewed M.B. after advising him of his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436).  M.B. revealed his nickname was "Little Mickey" and he had been "kicking back" with the Townsend Street criminal street gang. Wilson also interviewed minor, who claimed he had just walked out of his house when the officers apprehended him.  When Wilson told minor they had been conducting surveillance of the area, he put his head down dejectedly and began to shake his head.  At trial, Wilson acknowledged he lost sight of minor and M.B. for several minutes after he left the surveillance location.  Wilson testified minor's hair looked "spiked up" on the day of his arrest, but his police report listed minor's head as shaved.  Wilson's police report also referenced minor wore a long sleeve "black sweater" when arrested, but he observed minor wearing a dark gray t-shirt from the surveillance point.  Wilson acknowledged "a good number" of similarly dressed Hispanic young men walked in and out of the apartment area during his surveillance.

3

Capacete testified Townsend Street was a criminal street gang whose primary activity was narcotics sales, and specifically the sale of cocaine base. He opined both minor and M.B. were actively participating with the gang on September 17, 2011, and they possessed cocaine base for sale for the benefit of, at the direction of, or in association with the gang. Minors were "doing work for the gang" and earning "proceeds to benefit the gang" that could be used to "bail inmates out" and purchase weapons.

Angel Carachuri testified as a defense witness. Carachuri stated minor lived in the apartment above his at 802 Townsend. On the day of the incident, around 12:00 or 1:00 p.m., he saw minor come downstairs. They spoke briefly, and Carachuri observed minor the entire time until the police arrived about five minutes later. Carachuri testified minor did not walk into the alley or interact with anyone else, and denied minor ran when the officers arrived.

Minor's aunt testified she was cleaning windows and watched minor as he left their apartment and walked downstairs to the courtyard. Minor stood near the older people who lived downstairs and remained in the courtyard five or 10 minutes until the police arrived and detained him. He did not run from police.

The juvenile court found minor committed the offenses as alleged. The court declared minor a ward of the court, placed him on supervised probation, and ordered him to obey various terms and conditions of probation.

II

DISCUSSION

*Sections 1040 and 1042 (Surveillance Location Privilege)*

Minor contends the juvenile court violated sections 1040 and 1042, and his constitutional rights in permitting the prosecution to maintain the confidentiality of Wilson's surveillance location without excluding the officer's testimony, or making an order or adverse finding against the prosecution. We review this issue for abuse of discretion. (*People v. Walker* (1991) 230 Cal.App.3d 230, 237–238.)

4

Before the jurisdictional hearing, Wilson testified at a hearing outside the presence of defense counsel. After the hearing, the court granted the prosecution's motion to shield Wilson's surveillance location under section 1040, the official information privilege.[1]

During the jurisdictional hearing, the court sustained the prosecution's objections to various questions posed by defense counsel based on section 1040. For example, the court sustained objections to questions seeking to determine (1) whether Wilson's surveillance location was within the confines of a satellite photograph depicting a two and one-half block, half-mile by half-mile area around 800 Townsend Street; (2) whether Wilson looked across the street to view minor and M.B.'s location in the alleyway; (3) how high Wilson's head was above ground level and whether he looked down on the minors from an upper story or was subterranean; (4) whether Wilson's location was well lit; (5) whether Wilson's view was filtered through any sort of glass; (6) the direction he looked to observe minor and M.B.; (7) whether he looked a small box, slit in a wall, or dark window, or had to position himself uncomfortably; (8) whether the officers went directly from the surveillance location to the alley; (9) the direction from which the officers approached the alley; (10) the patrol car's location during the surveillance; (11) whether Wilson looked through the chain link fence bordering the alley on the west; (12) whether the officers changed their appearance before approaching minor and M.B.; (13) whether Wilson maintained visual contact with minor and M.B. between the surveillance and approaching the minors; (14) whether the officers could have seen the juveniles if they were 25 yards east of their location somewhere in the apartment building; (15) whether Wilson was inside the apartment

---

[1]     Minor does not challenge the juvenile court's finding disclosure of the surveillance location was against the public interest, conceding the necessity for preserving the confidentiality of the information outweighed the necessity for disclosure. Wilson testified disclosure of the location would hinder ongoing law enforcement efforts, and would pose an officer safety hazard.

buildings; and (16) whether Wilson could see the back of apartment 802 or into the courtyard in front of that apartment. The court later denied a motion to strike all of Wilson's percipient observations.

Section 1040, subdivision (a), allows a public entity to claim a privilege and shield nonpublic "information acquired in confidence by a public employee in the course of his or her duty." The privilege applies when disclosure of the information would be "against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice." (§ 1040, subd. (b)(2).) When the trial court sustains a section 1040 privilege claim, section 1042, subdivision (a), directs the court to "make such order or finding of fact adverse to the public entity bringing the proceeding as is required by law upon any issue in the proceeding to which the privileged information is material."

Thus, the trial court must first determine whether the prosecution properly invoked the surveillance privilege under section 1040, an issue not raised in this appeal. If the court sustains the privilege, it must then determine whether the location is material under section 1042.

In *People v. Lewis* (2009) 172 Cal.App.4th 1426 (*Lewis*), the prosecution charged the defendant with selling cocaine and possessing the drug for sale. An officer testified he made observations of a street-level transaction between the defendant and a woman from an undisclosed building, using binoculars, above street level, from a distance of 50 to 100 feet. (*Id.* at p. 1429.) The hidden officer radioed the woman's description to other officers, who arrested her. Before the officers detained her, she dropped a piece of rock cocaine. (*Id.* at p. 1430.) Approximately two minutes passed while the hidden officer observed the woman's arrest. He returned his attention to the defendant and radioed the defendant's location and description to the other officers. The defendant ran as the officers approached, discarding an empty plastic bag. (*Ibid.*) The

officers apprehended the defendant and found rock cocaine hidden in his sock. He did not have a significant amount of money on his person. (*Id.* at p. 1431.)

*Lewis* reviewed cases previously addressing how to determine whether a surveillance location was material, and distilled the following standard: "[T]he location from which the surveillance was performed is not material, for the purpose of section 1042's adverse finding requirement, if the accuracy of the testifying officer's testimony about the surveillance observations is unquestioned, or at least is sufficiently corroborated by independent evidence such that there is no realistic possibility that disclosing the surveillance location would create a reasonable doubt in the minds of a reasonable jury about the officer's veracity." (*Lewis, supra*, 172 Cal.App.4th at p. 1438.)

For example, in *People v. Walker, supra*, 230 Cal.App.3d 230, there was independent evidence that the officer who observed the drug transaction had provided a description of the cocaine buyer and his vehicle to another officer, who detained the buyer three minutes later and found cocaine in the same pocket where the observing officer testified he had seen the buyer conceal it. Moreover, when defendant was later arrested, he spontaneously identified the buyer, and the buyer's vehicle and female passenger, while denying he had sold them any drugs. These facts constituted independent evidence sufficient to corroborate the accuracy of the observing officer's testimony.

Similarly, in *In re Sergio M.* (1993) 13 Cal.App.4th 809, the observing officer's testimony also was corroborated when another officer detained the buyer within minutes based on the observing officer's description and found drugs in the buyer's possession, which was consistent with the observing officer's testimony.

The factor common to all of these cases is that *other officers* corroborated *the accuracy of the observations* made by the officer in the hidden surveillance location. The fact that the second officer was able to act upon a description the observing officer provided and detain the purchaser of drugs only minutes after the transaction observed

7

provides compelling independent evidence that the alleged crime *was, in fact, observed*. We have no such evidence here.

Here, Wilson was the only percipient witness to testify in support of the People's case, and all his observations of drug sales occurred from the hidden outpost. He also found the drugs allegedly discarded by M.B. in the stairwell across the street, and described minor's allegedly incriminating reaction to information about the surveillance. Wilson's observations formed an essential basis for expert testimony the minor possessed cocaine for sale. Minor questioned the accuracy of Wilson's testimony about his surveillance observations, and produced two witnesses, including an apparently disinterested downstairs neighbor, who testified minor came downstairs and did not leave the area of the stairwell until his arrest. As recounted above, the juvenile court prevented the defense from cross-examining Wilson about numerous matters, including the perspective and angle of view from which the officer made his observations. Cross-examination raised the possibility Wilson would not have been able to make the observations about which he testified depending on his location.

The Attorney General argues Wilson's observations "were sufficiently corroborated by independent evidence." The Attorney General emphasizes Wilson's testimony about the length of the observations, the number of transactions he observed without using binoculars, his testimony about distance, the absence of obstructions, and the lighting and weather conditions. She also notes Wilson's "prior familiarity" with minor, which "lessened the possibility that" he "could have mistaken [minor] for someone else." She also points out minor allegedly yelled "police" and ran with M.B., and minor's guilty demeanor when he learned he had been under surveillance.

We are not persuaded. Simply put, Wilson's testimony cannot "independently corroborate" his own testimony. Wilson's information was not corroborated by other officer witnesses who arrested buyers, or who found drugs and

8

other evidence as described by the observing officer.  The transactions were not photographed or otherwise memorialized.

The Attorney General places primary reliance on *People v. Haider* (1995) 34 Cal.App.4th 661.  But in *Haider*, the arresting officer corroborated the observing officer's description of the cocaine.  Indeed, the defendant in *Haider* never disputed his identity and participation in a drug transaction.  Moreover, the trial court in *Haider* permitted defense counsel latitude to cross-examine the officer on the existence of any obstructions, the officer's distance from a fence in the area, *the officer's angle of vision, and the direction from which the officer observed the defendant*.  In contrast, the trial court here sustained objections to minor's efforts to cross-examine the officer about these key facts.  As *Lewis* observed, "the section 1040 privilege does not prevent a defendant from cross-examining the testifying officer about the distance and angle of view from which the officer made the observations." (*Lewis, supra*, 172 Cal.App.4th at p. 1438.)

The trial court's violation of section 1042 was prejudicial and requires reversal.  (*Chapman v. California* (1967) 386 U.S. 18 [harmless beyond a reasonable doubt standard]; *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 684 [inquiry is whether, assuming cross-examination reached its full potential to damage the credibility of the witness, a reviewing court might nevertheless conclude the error in prohibiting it was harmless beyond a reasonable doubt, taking into consideration the importance of the witness's testimony to the prosecution's case, the presence or absence of evidence corroborating or contradicting the witness's testimony on material points, the extent of the cross-examination permitted, and the overall strength of the prosecution's case].)

9

## III

### Disposition

Judgment reversed.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


IKOLA, J.