Filed 3/6/13  In re Miguel B. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re MIGUEL B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | |
| Plaintiff and Respondent, | G046267 |
| v. | (Super. Ct. No. DL033710) |
| MIGUEL B., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Nick A. Dourbetas, Judge.  Affirmed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Laura A. Glennon, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

The court adjudged minor Miguel B. a ward of the court under Welfare and Institutions Code section 602 after finding he violated Health and Safety Code section 11351.5 (possession for sale of cocaine base) and Penal Code section 186.22, subdivision (a) (street terrorism), plus found true the criminal street gang enhancement as to count 1. The court placed him on probation after serving 120 days in Juvenile Hall. Minor appeals contending the trial court erred in denying him discovery of the location from which a detective claimed to have viewed his illegal transactions and restricting cross-examination of the detectives to determine whether they could observe and identify him. He also contends the evidence supporting the findings he committed street terrorism and the criminal street gangs enhancement was insufficient.

We disagree with these claims and affirm the judgment.


FACTS


1. *The scene of the crime.*

Santa Ana Detective Rashad Wilson testified that early one afternoon, he and Justo Capacete, also a Santa Ana detective, observed minor and a companion, Jario E. in the alley behind an apartment complex. The two boys were about three feet from each other. Jario was getting the attention of drivers of passing cars by whistling or by waving his hands. When a car stopped, Jario would waive minor over to the car, whereupon minor approached the driver's side of the car. Wilson then observed an exchange of money for a baggie containing an off-white substance between minor and the car's driver. Thereafter, the car would leave. While these transactions took place, other people and other cars were present in the alley.

As discussed below, the site of this surveillance was undisclosed, but Wilson testified he and Capacete were about 25 yards from the transactions. The weather

was clear and Wilson claimed nothing obstructed his view.

About 20 minutes after starting the surveillance, the detectives drove their police car into the alley toward minor and Jario. While doing so, Wilson lost sight of the two boys. When he next saw Jario, the latter yelled "police" and both boys started to run away. The detectives got out of their car, and yelled "police, freeze." Jario stopped and Capacete stayed with him. Wilson chased minor who ran to an apartment complex across Townsend Street. Wilson testified he saw minor remove a plastic baggie from his pocket and "place it behind the stairwell." Minor then sat down on the stairs, whereupon Wilson detained him. Wilson later retrieved a "clear plastic baggie containing four off-white wafers, similar to cocaine base" from the stairwell area. Later testing confirmed the substance in the baggies was cocaine base.

*2. Official information privilege.*

Before the trial, the prosecutor advised the court that detective Wilson did not want to disclose the location from which he and Capacete observed the transactions between minor and the occupants of automobiles. He stated the detective wished to invoked the privilege under Evidence Code sections 1040 and 1042. The trial court conducted an in camera hearing with only the prosecutor and Wilson present and ordered the transcript of this hearing sealed. The court granted the motion, finding the surveillance location was not material. Minor's lawyer noted a continuing objection to this ruling.

During the in camera hearing, Wilson testified "[d]isclosure of the location . . . would hinder our efforts by disclosing the area that we observed narcotic activity, it is an area from where we observe the gang activity. [¶] . . . [¶] It is an area that we observe parolees from the neighborhood going in and out of the area, having access to the neighborhood. It also provides an area for us in the documentation of

3

search warrants.  And it would also provide an officer safety hazard as well . . . .  [¶] [¶] It would provide an officer safety issue if the people found out where we were.  That would put us in a vulnerable position, and we could be possibly assaulted."

DISCUSSION

*1. The trial court properly limited cross-examination.*

Evidence Code section 1040 deals with "official information" which is defined as "information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made."  (Evid. Code, § 1040, subd. (a); all further statutory references are to this code.)  The statute then provides "[a] public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so."  (§ 1040, subd. (b).)  The privilege is conditional and attaches only if "the court determines, in accordance with precise statutory standards, that disclosure is against the public interest . . . ."  (*Shepherd v. Superior Court* (1976) 17 Cal.3d 107, 123, overruled on another point in *People v. Holloway* (2004) 33 Cal.4th 96, 131.)  In *County of Orange v. Superior Court* (2000) 79 Cal.App.4th 759, the late Justice Thomas Crosby of this court noted, "[t]he Supreme Court may have exaggerated a bit in referring to 'precise statutory standards.'  The statute states only that disclosure is against the public interest where 'there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice . . . .'  (§ 1040, subd. (b)(2).)  In other words, application of the privilege involves the always imprecise art of weighing competing interests."  (*Id*. at p. 763.)

4

Section 1042 governs to access to "official information" in criminal proceedings. It provides that the court must rule against the public entity "upon any issue in the proceeding to which the privileged information is material." (§ 1042, subd. (a).) The court here ruled that the surveillance location was not material. This finding was correct. We examined the transcript of the in camera hearing and are satisfied the court did not abuse its discretion in finding the privilege against disclosure of the exact site of the surveillance outweighed the necessity for disclosure and that this information was not material. The court also properly limited cross-examination on matters that would have disclosed the surveillance location.

The court sustained the prosecutor's objection to a substantial number of questions that would provide information concerning the surveillance location. The Attorney General calls our attention to some similar questions where the prosecutor's objections were overruled. The court also sustained objections under section 1040 to inquiries by co-minor Jario relating to the same subject.

"'[T]he right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. Indeed . . . to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law.' [Citation.]" (*People v. Brown* (2003) 31 Cal.4th 518, 538.) But we have reviewed the cases that dealt with a refusal to permit a criminal defendant to know the site of a surveillance and are satisfied the trial court did not abuse its discretion in precluding minor from learning the surveillance site in this case. (See *People v. Lewis* (2009) 172 Cal.App.4th 1426; *People v. Haider* (1995) 34 Cal.App.4th 661; *In re Sergio M.* (1993) 13 Cal.App.4th 809; and *People v. Walker* (1991) 230 Cal.App.3d 230.)

In *People v. Lewis, supra,* 172 Cal.App.4th 1426, the court reviewed all of the published cases addressing whether a surveillance location to which a claim of privilege had been sustained qualified as material information and distilled from them the

5

following rule:  "the location from which the surveillance was performed is not material, for the purpose of section 1042's adverse finding requirement, if the accuracy of the testifying officer's testimony about the surveillance observations is unquestioned, or at least is sufficiently corroborated by independent evidence such that there is no realistic possibility that disclosing the surveillance location would create a reasonable doubt in the minds of a reasonable jury about the officer's veracity."  (*Id.* at p. 1438.)

In *People v. Haider, supra,* 34 Cal.App.4th 661, the buyer in the transaction described by the observing officer was later seen discarding a piece of rock cocaine matching the observing officer's description of the cocaine sold to him by the defendant. In *Lewis* itself, the court noted the accuracy of the observing officer's testimony that he saw the defendant sell cocaine to a woman "is corroborated by the fact that [two other officers] were able to identify that woman based on Bryant's description of her appearance, location, and direction of travel.  Had Bryant been unable to observe the transaction between appellant and the woman with sufficient clarity to identify the participants, he would not have been able to give an accurate description of the woman to [those other officers.]"  (*People v. Lewis, supra*, 172 Cal.App.4th at p. 1440.)

The factor common to all of these cases is that there was corroboration of the accuracy of the observations made by the officer in the hidden surveillance location. That is the case here as well.  Wilson had previously met the minor and was thus familiar with his appearance.  When minor and Jario saw the detectives they immediately started to run away.  Wilson saw minor remove a plastic baggie from his pocket and "and place it behind the stairwell," and the baggie contained cocaine base.


*2. Substantial evidence supports the findings of street terrorism and the criminal street gang enhancement.*

In determining sufficiency of the evidence, we do not reweigh the evidence; if any reasonable trier of fact could have determined that each element of the crime was

6

established beyond a reasonable doubt, we must affirm. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

Minor argues there was insufficient evidence he was an active participant in the Townsend Street Gang. Not so. On previous occasions minor had admitted such an association. At the time of his arrest, minor told a detective that he was called "Little Mickey." Also, minor had been observed with a cell phone with photos of himself and another Townsend Street Gang member displaying hand signs that showed gang affiliation. Also Jario, his cohort in the crime, belong to an affiliated gang.

Minor next argues there was no evidence of a "specific intent to promote, further, or assist in any criminal conduct by gang members." (Italics omitted.) (Citing *People v. Romero* (2006) 140 Cal.App.4th 15, 19.) Capacete, the gang expert, testified the primary activity of the Townsend Street Gang is the sale of narcotics, most commonly crack cocaine. Without citing authority in support of the proposition, minor argues that there was no evidence of his "specific intent." Express evidence of specific intent is not required. "'[I]f substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members.' [Citation.]" (*People v. Livingston* (2012) 53 Cal.4th 1145, 1171.) Here, minor committed the crime charged in count 1, one of the Townsend street gang's primary activities, with Jario, a known member of an affiliated gang. This evidence sufficed to support the court's true finding on the enhancement.

DISPOSITION

The judgment is affirmed.


                                  RYLAARSDAM, ACTING P. J.

WE CONCUR:


BEDSWORTH, J.


ARONSON, J.